## JENNINGS *v.* CARSON.

### *Prize.*

The owner of a privateer, capturing neutral property, is not liable to a decree of restitution, unless the property or its proceeds, came to his hands.[1]

The district courts of the United States are courts of prize; and have power to carry into effect the sentences of the old continental courts of appeals in prize causes.[2]

In all proceedings *in rem*, the court has a right to order the thing to be taken into custody of the law ; and it is to be presumed to be in custody of the law, unless the contrary appears.

The thing does not follow the appeal into the superior court, but remains in the court below, which has a right to order it to be sold, if perishable, notwithstanding the appeal.[3]

Carson *v.* Jennings, 1 W. C. C. 129, affirmed.

THIS was an appeal from the sentence of the Circuit Court for the district of Pennsylvania, in a cause civil and maritime, in which Jennings was the libellant, and Carson, the respondent ; the former claiming to be owner of the sloop George and cargo, captured, in the year 1778, by the American privateer Addition, commanded by Moses Griffin, of which the respondent, Carson, was part-owner, and which was libelled and condemned, on the 31st of October 1778, as lawful prize, by the court of admiralty for the state of New Jersey ; from which sentence of condemnation, there was an appeal to the continental court of appeals, established under authority of the old congress, where the sentence of condemnation was, on the 23d of December 1780, reversed, and restitution ordered, but never obtained. In the meantime, however, the vessel and cargo had been sold by the marshal of the state court of admiralty, for paper money, under an order of the court contained in the sentence of condemnation, and it did not appear what had been done with that money. No measures were taken to enforce the decree of restitution, during the old confederation.

On the 19th of May 1790, after the adoption of the present constitution of the United States, Jennings filed his libel in the district court for the district of Pennsylvania, alleging that he was a subject of the States *3]   *General of the United Provinces, an inhabitant, and domiciled, at the island of St. Eustatius, and owner of the sloop George and her cargo, at the time of capture, bound to the port of Egg Harbor in the United States, and consigned to A. & G. Caldwell ; in the prosecution of which voyage, she was illegally captured by the privateer Addition, owned in part by the respondent, Carson, and praying process for arresting Carson, to answer, &c. A supplemental libel was filed, setting forth the proceedings against the vessel in the court of admiralty of New Jersey ; the sentence of condemnation ; the appeal ; the reversal of that sentence, and the order of restitution.

Neither the original nor supplemental libel prayed any specific or general relief, other than process for arresting Carson, so that he should appear to

---

[1] The George, 1 Mason 24.

[2] Penhallow *v.* Doane, 3 Dall. 54; The Amiable Nancy, 3 Wheat. 546; The Emulous, 1 Gallis. 563; The Amy Warwick, 2 Spr. 123;

The Anna, Bl. Pr. Cas. 337; The Siren, 7 Wall. 152.

[3] The Hiawatha, Bl. Pr. Cas. 198; The William Bagaley, 5 Wall. 412.

Jennings v. Carson.

answer the libellant " in his said complaint, of the wrongs and injuries aforesaid, according to the resolutions of the continental congress, the laws of the United States, and of the commonwealth of Pennsylvania, and the laws and usages of nations in this behalf practised, used and established."

Carson, being taken upon the writ of arrest, appeared and filed his plea and answer, averring the sloop George to have been the property of a subject of the King of Great Britain, at the time of capture, and employed in carrying goods to the British army and navy ; that the goods were imported, directly or indirectly, from Great Britain or Ireland, contrary to the regulations of congress and the law of nations ; the King of Great Britain then being at war with the United States. It admitted, that Carson was the owner of one-third of the privateer. It admitted the capture, the condemnation and sale, the appeal and reversal, and the order of restitution, but denied, that any part of the proceeds of the sale ever came to the hands of the owners of the privateer, or either of them, but remained in the hands of the marshal of the court of admiralty of New Jersey, who alone was answerable for the same. It averred, that Griffin, the commander of the privateer, had probable cause for *making the capture, and therefore, the owners          [*4 were not liable. It denied the jurisdiction of the district court of Pennsylvania to take cognisance of the question, the same belonging exclusively to the court of admiralty of the state of New Jersey, and to the court of appeals established by the continental congress. It denied the jurisdiction of the court, as a prize court, in any case, and especially, in cases of capture made during the British war, and averred, that it had no authority to carry into effect a decree of either of those courts established under the old government.

After filing his plea and answer, Carson died, and Jennings filed a petition, suggesting the death of Carson, and charging his executors with assets, and praying that the suit might stand revived against them ; upon which, a citation issued, and the executors appeared and answered, generally, by a reference to the answer and plea of their testator, and further pleaded, that by the law maritime, the law of the land, and the laws and ordinances of the United States, they, as executors, were not liable to be proceeded against in that court for the several matters set forth in the libel, for that they were not answerable for the wrongs and offences, or the pretended wrongs and offences, of their testator ; and also, for that courts maritime have not authority to intermeddle with the estates and effects, real or personal, of deceased persons, or to give relief against the same, or to seize or take the same effects or estates in execution, or to imprison the bodies of executors, for the default of the testator. To these pleas and answers, there were general replications.

On the 30th of March 1792, the judge of the district court gave an opinion in favor of its jurisdiction, in general cases, as a prize court ; but on the 21st of September 1793, he dismissed the libel, on the ground, that the district court was not competent to compel the execution of a decree of the late continental court of *appeals.(a)    This sentence          [*5

(a) The following learned opinion of the Hon. Judge Peters, upon the prize jurisdiction of the district courts of the United States, is too important to be omitted.[1]

[1] Reported in 1 Pet Adm. 1.

was affirmed in the circuit court, on the 11th of April 1798, but was reversed by that court, at February term 1799, so far as the same *decreed that the district court had no jurisdiction to carry into effect

"This is a case in which the general principles are stated in the proceedings and exhibits, and therefore, will appear clear enough by the perusal of them. There are some circumstances, however, not clearly ascertained by those exhibits, which I shall have occasion to mention, in the course of the observations which I shall make on the merits hereafter. The libel complains of the illegal capture of the sloop George, whereof Robert Smith was master, and her cargo, the property of the libellant, then and now a subject of Holland, during the late war, viz., in July 1778, by the schooner privateer Addition, Moses Griffin, commander, belonging to the testator, Joseph Carson, and others, who are named in the answer of Joseph Carson, in his lifetime.

"It is alleged on the part of the respondents, that the vessel captured was employed in carrying goods belonging to the subjects of Great Britain, contrary to the regulations and laws of the then congress. They rely on the libel and condemnation in the state court of admiralty of New Jersey, the verdict of the jury ascertaining the facts, and the condemnation by the court and order of sale, and for payment of the net proceeds to the captors; the sale of the vessel and cargo at vendue, and the moneys being received by the marshal of the court, in whose hands it is said they now remain, in depreciated paper, not having been distributed to and among the captors, and of course, the respondents, or their testator, received no part thereof, and therefore, they allege that the marshal only is chargeable to the libellant, and not the respondents or the testator. They insist, that there was probable cause of seizure, and therefore, the captors are not answerable in damages. They also plead in abatement to the jurisdiction of the court, because they assert that the subject of prize or no prize belongs to the admiralty of New Jersey, and not to this court, which has no cognisance of the question; nor has it power to effectuate its judgment against executors. On the part of the executors, particularly, an answer was put in, denying their being chargeable for the torts of the testator, which, as well as their consequences, die with his person. But on an explanation on the behalf of the libellant, that he claimed no damages for the tort, merely as a tort, but sought for restitution of his property only, the point was abandoned by the advocates for the respondents.

"The libellant, to repel this defence, and denying, in the usual form, the facts as stated, sets forth the reversal of the judgment of the court of New Jersey, by the decree of the court of appeals of the United States, the 23d of December 1780, which contains a direction to the latter court to make restitution of the property, with costs, but not damages. They also join issue on the point of jurisdiction, and distinguish between a suit commenced in the lifetime of the testator, and one brought, in the first instance, against the executors.

"Five points were made by the advocates of the respondents : 1st. The tort dying with the person ; 2d. The jurisdiction of this court is not competent, as it is not a prize court ; 3d and 4th. If a prize court, yet, as the cause originally attached in the court of New Jersey, that was the only court in which the consequences were cognisable, and alone competent to effectuate the decree of the court of appeals ; 5th. A capture, with probable cause, is not a subject of action for damages.

"The first point being waived, brings the question to the competency of jurisdiction, which, in order, as well as necessity, should be the first point considered, because, if the court has no jurisdiction, it is nugatory to inquire into the merits of the cause. On this point, as it first struck me, I confess, I had doubts. The account given by Lord MANSFIELD of the arrangement of the court of admiralty in England, as detailed in the case of Lindo v. Rodney, produced hesitation, and my respect for the opinion of that great character, as well as the arguments of the advocates, in the present cause, induced a deliberate consideration of the subject. The division of the court of admiralty into two sides, prize and instance, was new to me, and it is allowed not to have

4

Jennings v. Carson.

the decree of the court of appeals, and the cause was remanded to the dis-
trict court for further *proceedings; the respondent being at liberty     [*7
to contend before that court, as matter of defence to the merits, or

---

been generally known, if at all, by the common lawyers in England, before that case was
determined. In this country, it never was known, nor does it appear, that any new
commission was ever transmitted to the colonial judge of the admiralty, from Great
Britain, before the revolution, in cases of wars between that kingdom and its enemies.
I have traced, from records and other authentic information, the proceedings of the ad-
miralty court of Pennsylvania, for a period exceeding fifty years, and I have the best
reason for believing, that the practice in other colonies was similar. In all the proceed-
ings, the prize suits are called suits civil and maritime. During the late war, when we
assumed and effected our independence, the proceedings were unaltered in this point.
I do not find that there is any such distinction, in any other nation, except it should be
found in Holland, and of this, I much doubt. The authority out of Bynkershoek 177,
produced by one of the advocates for the respondents, founded on an ordinance of the
Earl of Leicester, shows that there is a court there, whose authority is entirely confined
to captures as prize, and it has no jurisdiction even of other maritime cases. This,
therefore, is not applicable to a question concerning the powers of a court of admiralty,
which is allowed, even in the case of Lindo v. Rodney, to possess jurisdiction in all mari-
time causes, though in England, it is said to act under a peculiar (and therefore not
generally known) organization. I take it, therefore, for granted, because the contrary
has not been shown, that in England alone, are these distinct branches of the same
court to be found. In all the books of reports, in which cases of prohibitions to the
admiralty are mentioned, precedent to the case of Lindo v. Rodney, these prohibitions
are moved for and granted, generally, to the court of admiralty; and though in a case
in Term Reports (long after the case of Lindo v. Rodney), the distinction is taken, and
the prohibitions moved for to the prize court, this very instance shows it to be a nov-
elty in the common-law books there, for if it had been known as an old practice, the
particular designation of the prize court would have been unnecessary, and the prohi-
bition would have been required to the admiralty, generally, as it ever had been in
former cases.

"Acting, as we now do, in a national, and not a dependent capacity, I cannot con-
ceive, that we are bound to follow the practice in England, more than that of our own
or any other nation. Customs, purely colonial, were parts of our laws, even in the
time of our connection with Britain. I need instance only one, viz., that of the mode
of conveyance of *feme coverts'* estates, contrary to the laws of England. This is a
case at common law, in which we then were, and now are, particularly called to follow
their rule and practice in general. The admiralty proceeds from a law which considers
all nations as one community, and should not be tied down to the precedent of one
nation, though it were more clearly ascertained. I shall, therefore, conclude, that if
the powers of an admiralty and maritime court are delegated by congress to this court,
those of a prize court are mixed in the mass of authority with which it is invested, and
require no particular specification. They are called forth (if generally delegated)
by the occasion, and not by repeated and new interferences of government. Nor do
I believe, that even in England, any new authority is vested, though a kind of legal and
solemn notice is given of a war, in which subjects for the prize authority of the admi-
ralty may occur. It does not begin with their wars, but was pre-existent. It does
not end with the commencement of peace, for their books show it to be exercised at
any time afterwards. Government never interferes to put an end to it: how then can
its power be repeatedly necessary to begin it? The fact is, it is inherent in a court of
admiralty, and not lost, but torpid, like other authorities of the court, when there are
no occasions for their exercise.

"But here the question arises, have congress, by their judiciary laws, vested this
court with general or special admiralty powers? Congress have authority (delegated

5

Jennings v. Carson.

to the form of proceedings, that the libel should first *have been filed in the district court of New Jersey, but not to make the decision of the judge on that point a ground of excepting to the jurisdiction of the district court of Pennsylvania, and that costs should await the event of the cause.

*9]       *Upon the second hearing of the cause, on the 2d of April 1802, the judge decreed in favor of the libellant, for the amount of sales of the sloop and cargo, reduced by the scale of depreciation, with interest, until two months after the order of restitution by the court of appeals ; and from the time of the institution of the present suit, until the day of final decree ; which decree was, on the 10th of May 1804, reversed by the circuit

---

by the people in the constitution) in 'all cases of admiralty and maritime jurisdiction.' The words of that part of the judiciary law affecting this subject, in which the authorities of the court are described, will be seen in the 9th section of that law : 'It shall also have exclusive original cognisance of all civil causes of admiralty and maritime jurisdiction, including seizures under laws of impost, navigation or trade of the United States.' It is said, prize or no prize, is a question of military, not of a civil nature ; but I find no such distinction in the books ; Blackstone, in his division of courts, does not class that of the admiralty as a military, but a maritime court, and it will appear, that the jurisdiction of prize is within its powers, though he points out, in cases of prizes, in the then colonies, that appeals were to members of the privy council and others, in consequence of treaties and domestic arrangements. But, he says, 'the original court to which this question is permitted in England, is the court of admiralty,' without any distinction as to the nature of its powers, whether instance or prize, military or civil. In book 3, p. 108, he mentions the exclusive and undisturbed jurisdiction of the courts of admiralty, in cases of prize ; and that court determines, not according to British laws or practice, but 'according to the law of nations.' Should I confine my attention merely to the inquiry, whether this could be classed under the description of a 'civil cause,' I should think there were grounds to support the idea of its being comprehended. In the case of Acheson v. Everett (Cowp. 382), some light is thrown on this view of the subject, because it appears, that a civil suit may, in substance, but not in form, partake of criminal ingredients. So, by parity of reason, may a civil cause of admiralty and maritime jurisdiction, be mixed with, or grounded on, transactions of a military nature. But I do not think it necessary merely to fix this point. What is, perhaps, of most consequence is, to ascertain the intention of congress, in distributing a power, clearly in them, to their judiciary departments. And what was said by one of the advocates for the libellant, strikes me as being just and proper, viz., that the construction should be made, from a consideration of all the laws on the subject, *in pari materia.* 'The court shall also have exclusive original cognisance of all civil causes of admiralty and maritime jurisdiction, including,' &c., that is, being invested with criminal powers in certain cases, it shall also have civil powers, as opposed to criminal, in admiralty and maritime cases. By recurring to the 12th, 13th, 19th, 21st and 30th sections of the judiciary law, it will appear, that congress meant to convey all the powers (and in the words of the constitution), as they possessed them, in admiralty cases ; and actions or suits in these cases can originate only in the district courts.

" For the foregoing reasons, and some others which might be added, I am of opinion, that this court possesses all the powers of a court of admiralty, and that the question of prize is cognisable before it. I have gone thus far into the discussion of this point, because I believe it is the first time it has been agitated in a federal court. I do, therefore, decree, adjudge and determine, that the plea to the jurisdiction of the court, as not being competent to determine on prize questions, be and the same is hereby overruled."

6

Jennings v. Carson.

court, and the libel dismissed with costs. From which sentence, the libellant appealed to this court.

*E. Tilghman*, for the appellant.—No delay can be imputed to the appellant. There was no limitation by law. The federal court of appeals was unpopular in those states that were attached to the trial by jury, and its jurisdiction was opposed with great warmth. He cited the case of the *Sloop Active*, and *Mr. Olmstead's Case*, and an act of the legislature of Pennsylvania, in support of that assertion. The jurisdiction of that court was not finally settled, until the case of *Penhallow* v. *Doane*, 3 Dall. 54, 85, 86.

He considered the case under six heads. 1. That if the appellant was entitled to redress, he was right in applying to the district court of Pennsylvania, and was not obliged to resort to that of New Jersey. 2. That if his suit was rightly commenced in the district court of Pennsylvania, that court had authority to decide finally on the case. 3. That the district court has jurisdiction of the question of prize. 4. That, if the appellant is entitled to redress, his remedy survives against the executors of Carson. 5. That it is immaterial, whether there was or was not probable cause for the capture. *6. That the owners of the privateer are answerable for the acts of the captors, their agents. [*10

1. As to the first point. One court of admiralty is competent to carry into effect the sentence of another ; even of a foreign court, and, *à fortiori*, of a domestic court. *Walker* v. *Witter*, 1 Doug. 1 ; *Jurado* v. *Gregory*, 1 Vent. 32 ; s. c. 1 Lev. 267 ; 6 Vin. 535, pl. 20 ; *Broom's case*, 1 Salk. 32 ; s. c. Carth. 398 ; *Ewer* v. *Jones*, 2 Ld. Raym. 935 ; *Penhallow* v. *Doane*, 3 Dall. 97, 118 ; 2 Browne's Civ. & Ad. Law 120.

The sentence of the court of appeals consists of three parts. 1st. Restitution ; 2d. Costs ; 3d. An order to the court below to carry the sentence into effect. The sentence was for restitution of the thing itself, not of its value ; nor of the amount for which it was sold. The appellant was not obliged to take anything in lieu of the thing itself.

If a judgment at common law is rendered against a plaintiff, in the circuit court, and that judgment reversed in the supreme court, and a mandate issues to the circuit court to execute the judgment of the supreme court, the plaintiff is not bound to take out his execution under the mandate, but may bring an action of debt upon the judgment, in any district of the United States where the defendant may be found. So, in this case, the claimant may libel the captors, in any district where they may be found. We are not bound to take the proceeds of the sale, in continental money. The reversal was on the 23d of December, in the year 1780, when paper money was a mere ghost, and worth nothing. It is immaterial, what became of the money, and whether it sunk in the hands of the marshal, or not. If our cargo had been suffered to arrive, we might have sold it, so as to avoid the effect of depreciation.

The resolution of congress, which provides that captured vessels should be libelled in the district into which *they should be brought, applies only to libels by the captors against the property, and not to libels by the claimant against the captors. These, *ex necessitate*, must be brought where the captors may be found. We cannot now proceed in the original [*11

court of admiralty of New Jersey, for it does not exist. It was a court deriving its authority from the state of New Jersey alone. By the constitution, all admiralty powers are now vested in the courts of the United States, and to those only can we now apply.

2. If the suit was rightly commenced in the district court of Pennsylvania, that court had authority to decide finally on the case. The words of the decree of restitution are all powerful—"the vessel and cargo *shall* be restored." We are, therefore, entitled to the thing itself, or its full value.

If it be objected, that the loss by depreciation is not chargeable to the respondents, we say, that it is a fundamental rule, that he who does the first wrong shall be liable to all the damages. The act of the marshal was the act of the captors. His sale, made after the appeal, was or was not regular. If regular, the proceeds were received to the use of the captors; if irregular, although under the order of the court, the captors are liable. *Roswell* v. *Prior*, 12 Mod. 639; 5 Vin. Abr. 405; *Childerns* v. *Saxby*, 1 Vern. 297–307; *Regina* v. *Tracy*, 6 Mod. 179.

At common law, if the judgment be reversed, after goods sold under a *fi. fa.*, the writ of restitution is to the plaintiff, and not to the officer; and the plaintiff must answer the value, not what they actually sold for. 2 Salk. 588; *Rook* v. *Wilmot*, Cro. Eliz. 209; *Atkinson* v. *Atkinson*, Ibid. 390; *Clerk* v. *Withers*, 11 Mod. 36; Vin. Abr. tit. Distress, 171, pl. 1, 2; Bro. Abr. Distress, pl. 72.

The sentence of the court of appeals is conclusive, that the capture was wrongful. It was a marine trespass. If the sloop had been taken by the British out of the hands of the captors, they would still have been liable. *Talbot's Case*, 1 Dall. 95; *Del Col* v. *Arnold*, 3 Ibid. 333; *Livingston and Welch* v. *McKenzie*, 3 T. R. 333 *in notis*.

3. The third point, viz., that the district courts of the United States have jurisdiction in questions of prize, was admitted by the opposite counsel.

4. If the libellant is entitled to redress, his remedy survives against the executors of the owners of the capturing vessel. The decree of the court of appeals is for restitution only, and the prayer of the libellant is for general relief, which is in all cases sufficient. *Penhallow* v. *Doane*, 3 Dall. 86–7, 107, 118. It is a rule in the civil law, that if the ancestor has appeared to the suit, the heir will be liable, and it is a maxim in equity, that the heir shall be liable, even in cases of tort. Domat 605, 607, 608, 609; *Hambly* v. *Trott*, Cowp. 374, 376; Grotius, lib. 2, c. 21, § 19, 20; Vinnius 785, 787.

5. To support his fifth position, that it is immaterial whether there were probable cause or not, he relied upon the cause of *Del Col* v. *Arnold*, 3 Dall. 333.

6. That the owners of the capturing vessel are liable for the act of the captors. In support of this position he cited *The Picimento*, 4 Rob. 293; *The Venus*, Ibid. 292; 1 Dall. 108; *Penhallow* v. *Doane*, 3 Ibid. 334.

*Lewis*, on the same side, offered to read authorities, to show that the appeal not only suspended the sentence, but the order to sell, unless a special power was given to the court to proceed to sell notwithstanding the appeal.

*Hare*, contrà, contended, 1. That the district court of Pennsylvania had not jurisdiction. 2. That the case of the libellant was void of merit.

Jennings v. Carson.

1. If the proceeding is not against the prize itself, nor the proceeds of the sale of the prize, nor against the persons of the captors, a prize court has no jurisdiction. No case can be produced, where a prize court has taken jurisdiction, merely against the persons of the owners of the capturing vessel. It is even doubted, whether a court of admiralty could entertain a suit against the proceeds, in the hands of the agent of the captors. " Proceedings upon prize are proceedings *in rem ;* and it is presumed, that the body and substance of the thing is in the country which has to exercise the jurisdiction." *The Flad Oyen,* 1 Rob. 119 (Am. Ed.). The jurisdiction of a court of vice-admiralty extends only to things brought within its authority. *The Carel and Magdalena,* 3 Rob. 53.

The sentence of the court of appeals required the court of admiralty of New Jersey to cause restitution to be made. If the former sentence in New Jersey is complete, it is a bar to a subsequent suit. If it is not complete, but is still pending, it is equally a bar. 3 Bac. Abr. 653 ; Prec. in Chan. 579.

2. As to the question of merits. Upon this subject, the case of *The Mentor,* 1 Rob. 151–3, is in point. This also is an antiquated claim, and not prosecuted against the actual wrongdoer, but against persons who were not present at the act complained of. Besides, there was probable cause, and therefore, no damages can be given. *The Betsey,* 1 Rob. 82. The sloop had sailed under a British convoy ; this was a strong ground of suspicion, and, added to the false account of her destination, her want of papers, and the destruction of papers, was sufficient ground to excuse from damages and costs. *Smart* v. *Wolf,* 3 T. R. 332 ; *Jenks* v. *Hallet,* 1 Caines 64 ; *Bernardi* v. *Motteux,* 2 Doug. 581 ; 1 Marsh. 317. The sentence of the court of admiralty of New Jersey is, of itself, conclusive evidence of probable cause. *Reynolds* v. *Kennedy,* 1 Wils. 232.

*The sale was the act of the court, and not of the party. The [*14 case of sale under a distress is not analogous ; it is the act of the party alone : it is not under the judgment of a court. The sale produced a fund, to which alone the libellant can resort. If a collateral security be given, and if that be lost, by the *laches* of the party, he shall never recover. From the date of the reversal of the decree, the marshal held the money to the use of the present libellant.

The rule of the civil law as to *torts* is the same with the rule of the common law, *actio personalis moritur cum personâ.*

THE COURT stopped *Ingersoll,* on the same side, and said, that the point which it would be difficult to establish on the part of the libellant is, that he would have been entitled to any remedy against the present appellees, even on the very day after the sentence of the court of appeals.

*Lewis,* in reply.—The sentence of the court of appeals is conclusive evidence of the falsity of the original libel, and that the capture was tortious.

That the present libellant is entitled to relief, in some form and in some court, cannot be questioned. It is not a case of common-law jurisdiction, and there is no state court of admiralty in New Jersey. If any court has jurisdiction, it must be a district court of the United States.

Two questions arise in the cause. 1. Is the libel filed in the proper court ? and 2. To what extent is the libellant entitled to relief ? [*15

*1. A neutral is entitled to restitution ; and if the captor will not

Jennings v. Carson.

proceed against the property, in a reasonable time, the owner may libel the captors, and pray that they may proceed to adjudication, or restore the property. The captured property must be considered as in the power and possession of the captors. The sale makes no difference, unless made by consent, or because the property was perishable, or under some act of congress or other statute law. The British statutes require that the captured property should be taken into the custody of certain officers of the government, or of the court, and thereby might be considered as in the custody of the law ; but congress had no such officers ; the custody remained with the captors, until trial, and acquittal or condemnation. Resolve of Congress of 27th of November 1774. If it had been a sentence of acquittal, a writ of restitution would have issued. A mandate would have been vain, unless the court had power to execute the sentence.

JOHNSON, J., inquired of Mr. *Lewis*, whether, in his practice, he had known any instance, in which, upon filing a libel, a warrant has not issued to take the captured property into the custody of the marshal.

MARSHALL, Ch. J.—It is certainly important, to ascertain in whose custody the property was. I had all along considered it as in the custody of the law.

*Lewis.*—I have had an opportunity of knowing a great deal of the admiralty practice, during our revolutionary war, being concerned in all the cases in Pennsylvania, and in all the appeals from the state courts. I do not know an instance in which such a warrant has issued. But the records of the court of appeals are in the office of the clerk of this court. In this very case, there was no such warrant.

LIVINGSTON, J.—It appears, that the sale was made by the marshal, under the order of the court. Must we not presume, that the court knew and did its duty ; and that the goods were in a perishing condition ?

*16]   *Lewis.*—If the general practice was, not to issue such a warrant, but to suffer the property to remain in the hands of the captors, and no warrant appears in this record, which ought to be presumed to contain all the proceedings in the case, the presumption is, that no such warrant ever was issued ; especially, if such warrant was not rendered necessary by the law. There was no writ or warrant of sale from the court to the marshal. The order of sale is embodied in the final decree itself. It was made, before the appeal, and while the court had the power to make such an order.

But the appeal suspended both the power to condemn and the power to sell. The appeal suspends the sentence, as to every purpose whatsoever, unless the power of sale, after appeal, be given by express law, or unless the goods are in a perishing condition.

The law of New Jersey which constituted the court, does not relate to the case of appeal, and the act of 18th December 1781, was made to remedy this defect, but that was made three years after the sale. In 2 Roll. Abr. 233, I, it is said, that if, " after sentence, the party appeal, the sentence is altogether suspended, during the appeal." And Wood, is his Institutes, p. 525, says, " All acts done after the appeal, in prejudice of the appellant, are to be reversed." In 2 Browne's Civil Law 437, it is said, that an appeal *apud acta* may be necessary to prevent the instant intermeddling of the

adversary. The same law is laid down by Coke, 4 Inst. 340; Sir Thomas Parker's Rep. 70, *Foster* v. *Cockburn*, where, upon argument and great deliberation, the court of exchequer decided, that their power to order a sale of the goods seized, was suspended by a writ of error, it not being sufficiently proved that they were perishable.

Before trial and condemnation, perishable articles may be sold, but in no other case, unless the power be given by statute law. 2 Browne's Civil Law, 227, 229, 446, 450. A special power to sell, notwithstanding an appeal, is given by the British prize acts; but no such power was given to the admiralty court of New Jersey, *either by the law of that state or [*17 the act of congress. 2 Browne's Civil Law 231, 454. If the property was in the custody of Carson, he was bound by the sentence of restitution.

As to the question, whethert he libellant has any remedy against the executors of the owners of the privateer, we say, that we claim merely restitution in specie, or of the value; we claim no damages for the tort.

CHASE, J.—This is a libel grounded upon the original wrong. The proceedings of the court of admiralty of New Jersey, and of the continental court of appeals, are brought in only as an exhibit. There is no new relief prayed for.

*Lewis.*—There is a supplemental libel, and the first libel prays for general relief. It is the same prayer as in the case of *Penhallow* v. *Doane*. The case in Cowper 74, shows that the remedy extends to executors, where the estate of the testator has been benefited by the tort. The case of *Penhallow* v. *Doane* is against the executors of the owner: the libel in the present case was drawn from that precedent.

MARSHALL, Ch. J.—The objection is, that the libel does not charge that the property has not been restored; nor that it has not been proceeded against; nor that the sentence of the court of appeals has not been carried into effect. If these allegations had been made in the bill, and there had been a prayer for general relief, your argument would be pertinent. But the libel complains only of the original tortious capture, and claims damages. There is no allegation that the property was destroyed, or that a wrongful sale had been made.

LIVINGSTON, J.—It is strange, that the case of *Penhallow* v. *Doane* should be cited by the appellant. The decision in that case is directly against him. The court there gave relief only for the property which actually came to the hands of the respondents.

*MARSHALL, Ch. J., observed, that in the case cited from Cowper, [*18 the property had come to the hands of the executor. The law of that case is not denied by this court.

*Lewis.*—This court is sitting as a court of admiralty, proceeding according to the law of nations. No irregularity of form ought to prevent us from obtaining relief, according to the case we make out.

As to the question, whether the district court of Pennsylvania had cognisance, he observed, that if the property had been carried first to New

Jennings v. Carson.

Jersey and then to Pennsylvania, the libel would have been proper in Pennsylvania. So, where the libel is against the person, and he is found in Pennsylvania, the libel must be filed there. The only remedy of the libellant is in the courts of the United States; and the federal district court of New Jersey is as foreign to the state court of New Jersey, as the federal district court of Pennsylvania.

Carson was bound by the decree of the court of appeals; and courts of admiralty, proceeding according to the law of nations, will aid each other in the execution of their sentences. Carson died, bound by the decree, and his executors are therefore bound. As they lived in Pennsylvania, we could only sue them there.

As to the extent of the relief, he observed, that the sentence was for restitution; and as that sentence was passed with the knowledge that a sale had been made, he inferred, that the court of appeals did not intend that the proceeds of the sale only should be paid over, but that there should be an actual restitution of the thing itself, or of its actual value. It is no answer, to say, that such is the usual form of decree, in cases where a sale has been made, because those are precedents where the sale has been lawfully made; but here it was unlawful.

*19] *Dallas*, on the same side.—*The real question is, who shall bear the loss of the depreciation of the money? and this depends upon the question, in whose possession was the property, at the time of the decree of restitution?

The claimant did no act, and was guilty of no omission, which could make that loss fall upon him; but it was a loss produced by the tortious act of the captors, and they are in law answerable for all the consequences.

In England, formerly, all captures were considered as made for the crown. It was only in consequence of the prize acts and proclamations, that the property was adjudged to the captors. But it is now settled, that the property vests in the captors, immediately upon the capture, 5 Rob.(*a*) and the resolves of the old congress take for granted the same principle. By the law of nations, the property is changed by the capture, and the owner has no further power over it. The claimant is really and substantially a defendant, through all the forms of proceeding, as well in the original suit, as in the present. There was no assent, on his part, to the sale; no acquiescence in any act of the court, or of the marshal. The decree of restitution supposes and implies that the property remained in the hands of the captors. The order for sale was made, to carry into effect the decree of condemnation, and for the purpose of distribution, not for the preservation of the property, nor to hold it in custody of the law. No security was given by the captors or by the marshal. No public notice was given of the sale; no such notice was required by the order of sale. The sale was made thirteen days after the order was suspended by the appeal, and the captor was the purchaser.

The case was before the court of appeals, upon its particular circumstances, as well as upon its general merits; and the fact of the sale, after

---

(*a*) The case of The Elsebe, 5 Rob. 173, seems *contrà*.

the appeal, must have been known to the court.  Two years had elapsed, since the original sentence.  A restitution of the thing itself was impossible ; and the form of the decree of reversal must have been a matter in question. If the sale had been regularly and lawfully made, the court of appeals would *have taken notice of it, and have decreed restoration of the proceeds [*20 of the sale.  *Penhallow* v. *Doane,* 3 Dall. 102, 115, 119.  It was a fact of which the captor might have availed himself before that court.

But the marshal is to be considered merely as the agent of the captor. The claimant had no remedy but against the person of the captor.  There is no evidence, that the proceeds of the sale are anywhere to be found.  The original libel did not ask for process to arrest the vessel, but merely prayed for condemnation.  The possession, and the right of possession, were in the captor.  There was no process to attach the vessel.  The first process was a monition and *venire* for the jury.  The marshal could have no right to possession, unless by virtue of process of attachment.  There is no order, in the whole proceedings, which takes the possession from the captor.  After the appeal, the order of sale was a nullity, and the sale by the marshal was as the agent of the captor, who was a trustee for the claimant, and had no right to sell; and is, therefore, liable for all the consequences.

February 11th, 1807.  MARSHALL, Ch. J., delivered the opinion of the court.—The privateer Addition, cruising under a commission granted by the congress of these United States, during the war between this country and Great Britain, captured the sloop George, brought her into port and libelled her in the court of admiralty for the state of New Jersey, where she was condemned as lawful prize, by a sentence rendered on the 31st of October 1778, and ordered to be sold by the marshal.  From this sentence, Richard D. Jennings, the owner, prayed an appeal, which, on the 23d of December 1780, came on to be heard, before the court of appeals constituted by congress, when the sentence of the court of New Jersey was reversed, and restitution of the vessel and cargo was awarded.  Pending the appeal, on the 13th of November 1778, the order of sale *was executed, and the proceeds of [*21 sale remained in possession of the marshal.  It does not appear, that any application was ever made to the court of New Jersey, to have execution of the decree of the court of appeals, and this suit is brought to carry it into execution, or, on some other principle, to recover from the estate of Joseph Carson, who was part-owner of the privateer Addition, the value of the George and her cargo.

So far as this bill seeks to carry into effect the decree of the 23d of December 1780, there is no doubt of the jurisdiction of the court ; but the relief granted can only be commensurate with that decree.  It is, therefore, all essential to the merits of this cause, to inquire how far Joseph Carson, the testator of the defendants, was bound by the sentence which this court is asked to carry into effect.

The words under which the plaintiffs claim are those which direct the restoration of the George and her cargo.  As the captors are not ordered, by name, to effect this restoration, and as the order bound those in possession of the subject on which it must be construed to operate, it must be considered as affecting those who could obey it, not those who were not in possession of the thing to be restored, had no power over it, and were, con-

sequently, unable to re-deliver it. Had Richard D. Jennings appeared before the court of New Jersey with this decree in his hand, and demanded its execution, the process of that court would have been directed to those who possessed the thing to be restored, not to those who held no power over it, either in point of fact or law.

This·position appears too plain to require the aid of precedent, but if such aid should be looked for, the case of *Penhallow* v. *Doane* unquestionably affords it. In that case, a decree of reversal and restitution was satisfied, by directing the proceeds of the sales to be paid ; and even the judge who tried the cause at the circuit, concurred with his brethren in reversing his own judgment, so far as it had decreed joint damages, and had thereby rendered the defendant liable for more than he had received. The case of *Penhallow* v. *Doane,* therefore, which must be considered as expounding the decree *of the court of appeals now under consideration, has decided that Joseph Carson was bound to effect restitution by that decree, so far only as he was, either in law or in fact, possessed of the George and her cargo, or of the proceeds.

*22]

To this point, therefore, the inquiries of the court will be directed. In prosecuting them, it will be necessary to ascertain whether, 1st. The George and her cargo were, previous to the sentence, in the custody of the law, or of the captors. 2d. Whether the court of admiralty, after an appeal from their sentence, possessed the power to sell the vessel and cargo, and to hold the proceeds for the benefit of those having the right.

It appears, that the court of New Jersey, which condemned the George and her cargo as prize, was established in pursuance of the recommendation of congress, and that no legislative act had prescribed its practice, or defined its powers. The act produced in court was passed at a subsequent period, and consequently, cannot govern the case. But the court cannot admit the correctness of the argument drawn from this act, by the counsel for the plaintiffs in error. It cannot be admitted, that an act defining the powers and regulating the practice of a pre-existing court, contains provisions altogether new. The reverse of this proposition is generally true. Such an act may rather be expected to be confirmatory of the practice and of the powers really exercised. Since we find a court instituted and proceeding to act as a court, without a law defining its practice or its powers, we must suppose it to have exercised its powers in such mode as is employed by other courts instituted for the object, and as is consonant to the general principles on which it must act.

That by the practice of courts of admiralty, a vessel, when libelled, is placed under the absolute control of the *court, is not controverted ; but the plaintiffs contend, that this power over the subject is not inherent in a court of admiralty, but is given by statute, and in support of this opinion, the prize acts of Great Britain have been referred to, which, unquestionably, contain regulations on this point. But the court is not of opinion, that those acts confer entirely new powers on the courts whose practice they regulate. In Browne's Civil and Admiralty Law, in his chapter on the jurisdiction of the prize courts, it is expressly stated, that those courts exercised their jurisdiction anterior to the prize acts, and the same opinion is expressed by Lord MANSFIELD, in the case of *Lindo* v. *Rodney,* which is cited by Browne. The prize acts, therefore, most probably regu-

*23]

Jennings v. Carson.

lated pre-existing powers in the manner best adapted to the actual circumstances of the time.

It is conceived, that the constitution and character of a court of admiralty, and the object it is to effect, will throw much light on this subject. The proceedings of that court are *in rem*, and their sentences act on the thing itself. They decide who has the right, and they order its delivery to the party having the right. The libellant and the claimant are both actors; they both demand from the court the thing in contest. It would be repugnant to the principles of justice, and to the practice of courts, to leave the thing in possession of either of the parties, without security, while the contest is depending. If the practice of a court of admiralty should not place the thing in the custody of its officers, it would be essential to justice, that security should be demanded of the libellant, to have it forthcoming to answer the order of the court.

If the captor should fail to libel the captured vessel, it has been truly stated in argument, that the owner may claim her in the court of admiralty. How excessively defective would be the practice of that court, if, on receiving such a claim, it neither took possession of the vessel, nor required security that its sentence should be performed. Between the rights of a claimant, where a libel is filed, and where it is not filed, no distinction is perceived, *and the court conceives the necessary result of proceedings *in rem* to be, that the thing in litigation must be placed in the custody of the law, and cannot be delivered to either party, but on sufficient security. [*24

In conformity with this opinion, is the practice of the court of admiralty, not only when sitting for the trial of prizes, and acting in conformity with the directions of positive law, but when sitting as an instance court and conforming to the original principles of a court of admiralty. In his chapter "on the practice of the instance court," under the title of "proceedings *in rem*," p. 397, Browne states explicitly, that when the proceeding is against a ship, the process commences with a warrant directing the arrest of the ship. In Browne 405, the course of proceedings against a ship, not for a debt, but to obtain possession, is stated at length, and in that case, too, the court takes possession of the ship.

It must be supposed, that a court of admiralty, having prize jurisdiction, and consequently, proceeding *in rem*, and not having its practice precisely regulated by law, would conform to those principles which usually govern courts proceeding *in rem*, and which seem necessarily to belong to the proper exercise of their functions. If in proceeding against a ship, to subject her to the payment of a debt, or to acquire the possession of her, on account of title, the regular course is, that the court takes the vessel into custody and holds her for the party having right, the conclusion seems irresistible, that in proceeding against a ship, to condemn her as prize to the captor, or to restore her to the owner who has been ousted of his possession, the court will also take the vessel into custody, and hold her for the party having the right.

This reasoning is illustrated, and its correctness in a great measure confirmed, by the legislation of the United States, and the judicial proceedings of our own country. By the judicial act, the district courts are also courts of admiralty, and no law has regulated their practice. Yet they proceed ac-

cording to the general rules of the admiralty, and a vessel libelled is always in possession of the law.

*An objection, however, to the application of this reasoning to the case before the court, is drawn from the defectiveness of the record in the original cause, which does not exhibit a warrant to the officer to arrest the George. The first step which appears to have been taken by the court, is an order to the marshal to summon a jury for the trial of the case. The carelessness with which the papers of a court, created for the purposes of the war, and which ceased to exist, before the institution of this suit, have been kept, may perhaps account for this circumstance. At any rate, the court of admiralty must be presumed to have done its duty, and to have been in possession of the thing in contest, if its duty required that possesion. The proceedings furnish reasons for considering this as the fact.

The libel does not state the George to have remained in possession of the captors, that the sale was made for them, or by their means, nor that the proceeds came to their hands. The answer of the defendants avers, that on bringing the George into port, she was delivered up, with all her papers, to the court of admiralty, and although the answer is not testimony in this respect, yet the nature of the transaction furnishes ample reason to believe that this was the fact; and it is the duty of the plaintiff, to show that the defendants are in a situation to be liable to his claim. If the process of the court of admiralty does not appear regular, this court, not sitting to reverse or affirm their judgment, but to carry a decree of reversal and restoration into effect, must suppose the property to be in the hands of those in whom the law places it, unless the contrary appears. The George and her cargo, therefore, must be considered as being in custody of the law, unless the contrary appears.

If this conclusion be right, it follows, that the regularity of the sale is a question of no importance to the defendants, since that sale was the act of a court having legal possession of the thing, and acting on its own authority.

*If the reasoning be incorrect, it then becomes necessary to inquire,

2. Whether the court of New Jersey, after an appeal from its sentence, possessed the power of selling the George and her cargo, and holding the proceeds for the party having the right?

That the British courts possess this power, is admitted, but the plaintiffs contend, that it is conferred by statute, and is not incident to a prize court. That the power exists, while the cause is depending in court, seems not to be denied, and, indeed, may be proved, by the same authority, and the same train of reasoning, which has already been used to show the right to take possession of the thing, whenever proceedings are *in rem.* Browne, in his chapter on the practice of the instance court, shows its regular course to be, to decree a sale, where the goods are in a perishable condition.

The plaintiffs allege that this power to decree a sale is founded on the possession of the cause, but the court can perceive no ground for such an opinion. It is supported by no principle of analogy, and is repugnant to the reason and nature of the thing. In cases only where the subject itself is in possession of the court, is the order of sale made. If it be delivered, on security, to either party, an order of sale pending the cause, is unheard of, in admiralty proceedings. The motive assigned for the order never is, that the court is in possession of the cause, but that the property in posses-

sion of the court is in a perishable state. A right to order a sale is for the benefit of all parties, not because the case is depending in that particular court, but because the thing may perish, while in its custody, and while neither party can enjoy its use.

If, then, the principle on which the power of the court to order a sale depends, is not that the cause is depending in court, but that perishable property is in its possession, this principle exists in as much force after, as before an appeal. The property does not follow the appeal into the superior [*27 *court. It still remains in custody of the officer of that court in which it was libelled. The care of its preservation is not altered by the appeal. The duty to preserve it is still the same, and it would seem reasonable, that the power consequent on that duty would be also retained. On the principles of reason, therefore, the court is satisfied, that the tribunal whose officer retains possession of the thing, retains the power of selling it, when in a perishing condition, although the cause may be carried by appeal to a superior court. This opinion is not unsupported by authority.

In his chapter on the practice of the instance court, page 405, Browne says, " If the ship or goods are in a state of decay, or of a perishable nature, the court is used, during the pendency of a suit, or sometimes after sentence, notwithstanding an appeal, to issue a commission of appraisement and sale, the money to be lodged with the registrar of the court, *in usum jus habentis.*" This practice does not appear to be established by statute, but to be incident to the jurisdiction of the court, and to grow out of the principles which form its law. A prize court, not regulated by particular statute, would proceed on the same principles; at least, there is the same reason for it.

But there is in this case, no distinct order of sale. The order is a part of the sentence from which an appeal was prayed, and is, therefore, said to be suspended with the residue of that sentence. The proceedings of the court of admiralty, if they are all before this court, were certainly very irregular, and much of the difficulty of this case arises from that cause; but as this case stands, it would seem entirely unjust, to decree the defendant to pay a heavy sum of money, because the court of admiralty has done, irregularly, that which it had an unquestionable right to do.

Since the court of admiralty possessed the power of making a distinct order of sale, immediately after the appeal was entered, and this, but for the depreciation, would *have been desirable by all, it is not unreasonable [*28 to suppose, the practice to have been, to consider the appeal as made from the condemnation, and not from the order of sale. The manner in which this appeal was entered affords some countenance to this opinion. In the recital of the matter appealed from, the condemnation alone, not the order of sale, is stated.

The court will not consider this irregularity of the admiralty, in ordering what was within its power, as charging the owners of the privateer, under the decree of the 23d of December 1780, with the amount of the sales of the George and her cargo, which, in point of fact, never came to their hands, and over which they never possessed a legal control, for the marshal states himself to hold the net proceeds to the credit of the former owners. It is, therefore, the unanimous opinion of this court, that the decree of the 23d of December 1780, does not require that the restoration and re-delivery which

it orders should be effected by the captors, but by those who, in point of law and fact, were in possession, either of the George and her cargo, or of the money for which they were sold. As the officer of the court of New Jersey, not the captors, held this possession, the decree operates upon him, not upon them.

On that part of the libel in this case which may be considered as supplemental, and as asking relief in addition to that which was given by the decree of the 23d of December 1780, the court deems it necessary to make but a very few observations. The whole argument in favor of this part of the claim is founded on the idea that the captors were wrongdoers, and are responsible for all the loss which has been produced by their tortious act. The sentence of reversal and restoration is considered by the plaintiffs as conclusive evidence that they were wrongdoers. But the court can by no means assent to this principle. A belligerent cruiser who, with probable cause, *seizes a neutral and takes her into port for adjudication, *and proceeds regularly, is not a wrongdoer. The act is not tortious. The order of restoration proves that the property was neutral, not that it was taken without probable cause. Indeed, the decree of the court of appeals is in this respect in favor of the captors, since it does not award damages for the capture and detention, nor give costs in the suit below. If we pass by the decree, and examine the testimony on which it was founded, we cannot hesitate to admit, that there was justifiable cause to seize and libel the vessel.

Upon the whole case, then, the court is unanimously of opinion, that the decree of the circuit court ought to be affirmed.

Sentence affirmed.