HARTLEY v. AMERICAN STEEL-BARGE CO.

(Circuit Court of Appeals, Eighth Circuit. April 10, 1901.)

No. 1,123.

NAVIGABLE WATERS—NEGLIGENT OPERATION OF DRAWBRIDGE—INJURY TO PASS-
ING VESSEL.

The owner of a drawbridge across a navigable channel in the Duluth-
Superior harbor *held* liable in damages for injury to a barge in tow, on
the ground that the bridge tender negligently failed to give the signal to
warn the approaching tug and tow of an obstruction which prevented the
opening of the draw until it was too late for the barge to stop, in conse-
quence of which she came in collision with the draw.

Appeal from the District Court of the United States for the Dis-
trict of Minnesota.

M. H. Boutelle (Thomas S. Wood, on the brief), for appellant.

H. R. Spencer (F. E. Searle, on the brief), for appellee.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. On June 22, 1899, a barge belonging to
the American Steel-Barge Company, the appellee, heavily laden, was
being towed down the channel of the Duluth-Superior harbor by a tug
called the "Record." On its way down it had to pass through two
drawbridges; the upper or most westerly one being a bridge which
belonged to the Northern Pacific Railroad Company, and the lower
or most easterly one being a bridge which belonged to the Duluth-
Superior Bridge Company. This latter bridge spanned the channel
between Rice's Point, in the state of Minnesota, and Connor's Point,
in the state of Wisconsin, and was used by wagons, street cars, and
pedestrians. At the date last named it was in charge of Guilford G.
Hartley, as receiver of the Duluth-Superior Bridge Company, the ap-
pellant. The two bridges were about 2,078 feet distant from each
other. In making the passage through the draw of the Duluth-Su-
perior bridge, the barge came in contact with the swinging span, and
was injured to some extent, as the owner of the barge claimed, in con-
sequence of the negligence of the draw tender, who was one of the
receiver's employés. To recover the damages which the barge sus-
tained in consequence of the collision, the American Steel-Barge Com-
pany exhibited its libel in personam in the district court of the United
States for the district of Minnesota, sitting at Duluth, against the
receiver, and obtained a decree against him in the sum of $1,043, to
reverse which the present appeal was taken.

On the trial below it was claimed by the libelant, and the same con-
tention is made here, that the bridge tender was negligent in per-
mitting the street car to enter upon and cross the draw after the tug
which had the barge in tow had given the usual signal to open the
draw, and that such act was a proximate cause of the collision. We
have given the testimony on this point careful consideration, and
have become satisfied that the draw was closed, and that the street
car had received the signal to cross the draw, when the tug sounded
its whistle to swing the draw. The tug, with the barge in tow, was

108 F.—7

at that time clearing the draw of the Northern Pacific bridge, and was distant at least 2,000 feet from the lower bridge. Abundant time then remained to permit the street car to cross the draw, and to swing it for the safe passage of the approaching tow, if nothing had happened to delay the car. It transpired, however, that the draw tender began to swing the draw before the rear platform of the car had fully cleared the same; the result being that the motion of the draw was arrested by coming in contact with the rear vestibule of the car, and the car was derailed. Some delay was thereby occasioned, to which the collision seems to have been attributable. If the case disclosed no conduct on the part of the draw tender which was culpable other than his permitting the street car to come upon the swinging span before the tow had made the passage, we should be of the opinion that he exhibited no such want of ordinary care as would justify a recovery. The tug was so far distant from the draw when it gave the signal to open the same, and the span could be swung in such a short space of time, that the draw tender was justified in believing that no risk would be incurred in permitting the street car to pursue its journey. It was his duty to act in such a manner as would interrupt travel across the bridge as little as possible, when he could do so without exposing water craft to risk of injury.

The lower court found, however, and in that view we are compelled to concur, that the bridge tender did not exercise reasonable care and diligence after the draw had collided with the end of the street car in the manner above stated. The swinging span of the bridge was provided at its center, where the draw tender was stationed, with a large red ball, which was designed to be raised so as to advise approaching water craft when the draw could not be swung for any reason; and there appears to have been unreasonable delay on the part of the draw tender in raising this ball after the motion of the draw was arrested, and he became aware of the fact. It should have been raised at once when the motion of the draw was obstructed, and it was uncertain how long it would remain obstructed, so as to warn the tow not to approach too closely until the draw was free. The bridge tender admits that he discovered the difficulty of opening the draw when the tow was at least 1,000 feet distant therefrom, or about midway between the two bridges. He claims to have raised the ball at that time, and if he had done so it is probable that the receiver could not have been adjudged guilty of culpable negligence. In opposition to his testimony, however, as to when the ball was raised, there was the testimony of several witnesses to the effect that it was not raised until the tow was within 200 or 300 feet of the draw. The trial court so found, and the weight of testimony confirms that view. When the tow had approached within the distance last specified, and the red ball was raised, every effort seems to have been made by the men in charge of the tow to arrest the forward motion of the barge. The tug began to back up stream, and the barge, which was provided with no machinery for its own propulsion, threw out both of its anchors, but such efforts failed, and the collision occurred.

In an admiralty case of this sort, which involves only questions of fact, we are bound to attach great importance to the finding of the trial judge, who has a better opportunity to judge of the credibility of witnesses, and we cannot undertake to reverse such a finding by the trial court unless it appears to have been clearly against the weight of evidence. The City of Naples, 32 U. S. App. 613, 16 C. C. A. 421, 69 Fed. 794, 796. Not only this rule, but our own view respecting the weight of the evidence, compels us to affirm the decree below upon the ground on which the decree was rested by the trial court.