_ **THE THOR.**

**THE E. C. DEMPSEY.**

**No. 705.**

District Court, D. Massachusetts.

March 25, 1938.

Richard F. Lenahan (of Macklin, Brown, Lenahan & Speer), of New York City, for libelant.

Charles S. Bolster (of Burnham, Bingham, Pillsbury, Dana & Gould), of Boston, Mass., for claimant and tug Thor.

Robert S. Erskine (of Kirlin, Campbell, Hickox, Keating & McGrann), of New York City, for claimant and tug E. C. Dempsey.

SWEENEY, District Judge.

This is a libel in admiralty in which the libelant seeks to recover for injuries to its barge Keystone No. 1, resulting from a collision between the barge and a mud scow being towed by the tug E. C. Dempsey.

Statements of fact herein are intended as findings of fact, and statements of legal conclusions, as rulings of law, in accordance with Admiralty Rule 46½, 28 U.S.C.A. following section 723.

The facts are as follows: On April 21, 1936, the barge Keystone No. 1 was being towed by the tug Thor (then named Nathaniel P. Doane). As it approached the eastern end of the Cape Cod Canal, en route to Tiverton, R. I., the tug Thor changed the barge tie-up from a long hawser to a short hawser running from the stern of the tug to a wire bridle fastened on the front of the barge. There was about 50 feet of open water between the stern of the tug and the forward end of the barge as they proceeded through the canal.

Having passed without incident through the length of the canal, the tug Thor proceeded around Hunnewell's Point, and thence directly towards buoy No. 21, keeping close to her right-hand side of the channel.

At about the time that the tug Thor made the turn at Hunnewell's Point, it observed the tug E. C. Dempsey, which had hooked up along its port side mud scow No. 52 which it was towing towards the westerly entrance of the canal, which means that it was going in a direction opposite to that of the tug Thor. The mud scow, which the E. C. Dempsey had in tow, was fastened along its port side so that the forward end of the mud scow projected about 100 feet beyond the bow of the tug E. C. Dempsey. They were holding to their right-hand side of the channel which at the point of collision was about 250 feet wide.

The master of the tug Thor observed, just prior to reaching a point opposite buoy 21, that his barge was following directly in line with the Thor, both of which were well over toward their own side of the channel. Just prior to the collision, the tug Thor was proceeding at a ground speed of about 7 knots per hour; 6 of which were induced by its own power, and the other one being induced by the fair tide on which it was riding. The Keystone, which was about 12 feet in height, was traveling light, and drew only 2 feet of water.

When the master of the Dempsey sighted the Thor coming down the channel, he brought the Dempsey over to a position that was very close to the bank of the channel on its starboard side, and there attempted to maintain his position without moving forward until the Thor with the Keystone in tow had passed. To maintain his position against the tide, it was necessary to give his tug a "kick" now and then. The collision occurred between buoys 21 and 16A at 10:30 p. m., and the points of contact were the forward port side of scow No. 52 and the rear port corner of the Keystone No. 1.

The master of the Thor did not see the collision, and it was only brought to his attention after he had heard yelling, and had come back to see the cause of it. The master of the Dempsey, just prior to the collision, noted that the stern of the Keystone was bearing toward the eastward, which would bring it in a position diagonal to the line of the channel. When he saw that the stern was bearing toward his side of the channel, he anticipated that the Thor would straighten the barge out by increasing the tug's power. No whistle was sounded by the Dempsey as a warning.

In attempting to keep the tug Dempsey and the scow No. 52 stationary while the

794

Thor and Keystone No. 1 were passing, the master of the Dempsey found it necessary to apply some power to offset the sweep of the tide against which he was holding his tie-up. There was a breeze of about 17 miles an hour blowing across the channel towards his boat, and it was necessary to point the forward end of his scow slightly towards mid-channel in order to offset the effect of the wind. His tug was so close to the bank of the channel that any sweep across the channel might have the result of driving his tug, which had a draft of 12 or 14 feet, on to the bank of the channel. Having a scow that was 185 feet in length, it would be necessary in order to maintain his position to so point the scow. It seems apparent that the Dempsey was at fault by reason of pointing the scow too far toward the center of the channel in view of the fact that it noted that the Keystone No. 1 was veering towards the Dempsey's side of the channel. The Dempsey apparently relied too much upon its belief that the Thor would straighten out its tow before a collision occurred. The action of the Dempsey in pointing its scow might have been a perfectly safe maneuver if all other things were right, but in view of the fact that the captain of the Dempsey had noted that the Keystone was swinging towards his side of the channel, I consider his action negligent, and so rule. In view of the fact that the Dempsey did not sound a warning to the Thor (although counsel have both disclaimed any fault on the part of the other by reason of the failure to blow signals), I find that the collision might have been averted had the Dempsey warned the Thor of the danger of collision.

I also find the tug Thor at fault in that its master either failed to note the swing of the barge Keystone, or, noting such swing, failed to apply additional power to the Thor so as to bring it back into line in the wake of the Thor. The Keystone, which was in the full control of the Thor, finds itself in a position of being damaged as a result of faulty operation of both the tug E. C. Dempsey and the tug Thor.

In such a situation, I find and rule that the libelant is entitled to a decree for one-half of its damages against each of the libelees. The decree should contain a provision that the libelant may collect from either of the libelees any deficiency arising through default in payment on the part of the other. Great Lakes Towing Co. v. Masaba S. S. Co., 6 Cir., 237 F. 577.