## THE ARGUS.

### THE CITY OF ALEXANDRIA.

### ALEXANDRE et al. v. THE ARGUS.

(District Court, E. D. Pennsylvania. January 24, 1896.)

1. COLLISION—STEAMER WITH TOW—LIABILITY OF TUG.

A steamer colliding with a dredge in tow of a tug was held in fault, and compelled to pay the entire damages, the tug not being found within the jurisdiction so as to make her a party. Afterwards the steamer's owners libeled the tug to enforce an alleged right of contribution in respect to the damages so paid. The steamer received no injury by the collision. *Held*, that no lien against the tug arose in favor of the steamer, in her own right, and that, if she had any remedy, it was by way of substitution to the lien which the tow may have had against the tug because of a fault committed by the latter.

2. SAME—TUG AND TOW.

A tug performing towage services, under a charter which places her movements absolutely under the control of the tow's officer and pilot, is not responsible to the tow for any movements which result in a collision with a third vessel.

This was a libel by Francis Alexandre, owner of the steamship City of Alexandria, against the steam tug Argus, to enforce an alleged lien arising from a collision of the steamer with a dredge in tow of the tug.

Robert D. Benedict, J. Warren Coulston, and Alfred Driver, for the City of Alexandria.

John F. Lewis and Henry R. Edmunds, for the Argus.

George A. Black, for insurance companies.

BUTLER, District Judge. The following statement of facts is adopted:

On September 21, 1886, a libel was filed in the district court of the United States for the Southern district of New York by the Deep Sea Hydraulic Dredging Company, owner of the dredge Queen, against the steamship City of Alexandria and the steam tug Argus, to recover damages for the sinking on September 9, 1886, of the Queen, while in tow of the Argus, by a collision with the City of Alexandria. The libel alleged specific faults contributing to the collision on the part of both vessels.

Process was issued to the marshal, and the marshal made return on the process that he had been unable to find the Argus in his district. The owners of the City of Alexandria appeared and gave bonds for her, and they answered the libel.

The cause was tried on the issues raised by the libel, and the answer of the City of Alexandria and the amended libel and amended answer. On June 17, 1887, the judge made his decision [31 Fed. 427] and on the 11th of October, 1887, the district court made its

interlocutory decree holding both vessels in fault and directing an apportionment of the damages. And on January 2, 1891, the court made its final decree in favor of the libelants, against the Alexandria, for the sum of $26,959.92, which sum was paid on January 12, 1891, with interest, in satisfaction of the decree. On August 15, 1887, after the rendering of the decision, but before the entering of the decree, the present libel was filed by the owners of the Alexandria against the Argus, by which the dredge was being towed at the time of the collision, averring that the Argus was in fault in respect to the collision and ought to contribute to the damages, and praying for a decree accordingly. The Argus was seized under the process in the action, and sold under order of the court for $16,150. Before the answer was filed, the libel was amended, by alleging the final decree in New York and payment and satisfaction thereunder. Afterwards on March 23d, the Argus filed an answer denying liability. The cause being thus at issue a petition was filed on September 2, 1892, by certain insurance companies, having insurance on the dredge when lost, asking to be allowed to intervene. To this petition the libelants excepted. The exceptions were dismissed after hearing, reserving to the libelants a right to press them on final hearing. They were not, however, so pressed.

The libelants must of course show a lien as the foundation of their suit. As I understand their position it is that the Argus was jointly responsible for the collision, and that a lien in their favor against her resulted from the collision (although the Alexandria sustained no damage thereby) for such sum as it might be decreed to pay the Queen on account of the Argus' fault; and that they may therefore sue the latter as they have done, and recover accordingly.

The position of the insurance companies is that the Argus was in fault, and that having paid the insurance on the Queen and taken an assignment of her rights, they may sue upon her lien against the Argus, and recover what the Queen might have recovered thereon.

In my judgment, no lien accrued to the Alexandria from the collision. No authority in support of the libelant's position is cited, and I do not know of any which tends to sustain it. The position seems unreasonable. The Alexandria was not injured by the collision. The injury which her owners have sustained, if they sustained any of which they can complain, resulted from the failure to attach the Argus in the Queen's suit, the subsequent decree of the court and the payment of money under it which the Argus should have paid. They were not hurt until required to pay; and it would not be known that they would be so required until the decree was entered. Their ground of complaint against the Argus is not, therefore, that she injured them by contributing to the collision, but by failure to pay damages to the Queen which she should have paid. I am satisfied that if the libel can be sustained it must rest on the Queen's lien (if she had any) against the Argus. If a lien resulted to the Queen from the collision, against the Argus it is possible that the

libelants might be substituted to her rights, under the circumstances. Thus substituted the libelants would stand as the insurance companies do, suing on the Queen's rights. They cannot in my judgment occupy a higher position. While the libelants and insurance companies are thus similarly placed they disagree as respects both the law and the facts; the former contending that the Queen was not only blamable for the collision, but that the decree in New York concludes her in this respect; while the latter contends that she was blameless, and is not affected by the decree, conceding that if this is not so no recovery can be had here. The insurance companies agree with the respondent that contribution between joint tort feasors cannot be enforced in this proceeding. The libelants and the insurance companies unite however in claiming that the Argus was in fault and responsible therefor to the Queen. This question is of course vital to both of them. It is not sufficient, however, to show that she might have been held guilty of fault by the Alexandria if that vessel had been injured by the collision or by any other vessel with which she might have collided at the time. It must appear that she was guilty of fault of which the Queen could complain; and in my judgment she was not. If she committed fault the Queen alone is responsible for it. She was under the latter's control and subject to her orders alone when the collision occurred. She was in the Queen's service under charter and subject to the command of her governing officer and pilot, who were in charge, having absolute authority over her movements. It would be unprofitable to discuss the evidence respecting this fact. The letter from the Argus' owners proposing terms of charter, considered in connection with the testimony of Mr. Branard, Mr. Laughlin, Capt. Tingle, Mr. Pride, Jr., Mr. Mulvany and others, leaves no doubt in my mind on this subject. To visit the consequences of a mistake in her movements, under the circumstances, on her owners, in favor of the Queen or any one claiming through her, would be unjust, as well as unprecedented. It is unimportant that the court in New York believed the Argus to have been in fault. She was not represented there, and her case was not heard. The belief expressed related simply to her acts, leaving the question of responsibility for them (as between her and the Queen) untouched; and this latter is the subject here involved. Nor is it deemed important that the answer to the libel did not originally state this defense. It is not difficult to see a sufficient excuse for the omission. The libel does not in terms, nor by fair implication, base the right to sue on an alleged lien of the Queen against the Argus; and it is very probable that such a foundation for the right was not in mind when the libel was filed; for as before stated the right was mainly, if not exclusively, rested on a distinctly different ground at final hearing. In the view thus presented it would be no answer to say that the Queen is responsible for the Argus' fault. As soon as the insurance companies intervened, claiming through the Queen, this defense was interposed; and when it was seen, on final hearing that

the libel might also possibly rest on the Queen's lien (if she had one) the respondents asked for and obtained leave to amend in this respect, with privilege to the libelants to take further testimony and be further heard on the subject.

As the conclusion reached is fatal to both the libelants and the insurance companies it is unnecessary to consider other questions discussed.

The libel must be dismissed, and the costs be borne by the libelants and insurance companies equally.

In the suit brought by the insurance companies against the owners of the Argus in personam for the same cause of action, a decree must be entered dismissing the libel with costs.