## THE MARISKA.

(Circuit Court of Appeals, Seventh Circuit. April 9, 1901.)

### No. 687.

1. COLLISION—RECOVERY OF DAMAGES—RIGHT TO ENFORCE CONTRIBUTION.

The rule of the common law that no contribution can be enforced between tort feasors is not the rule in admiralty as between two vessels each of which was in fault for a collision by which a third party sustains damage, but, on the contrary, the right of each to require the other to bear an equitable proportion of the loss has always been enforced as a substantial legal right, and it was in recognition of such right that admiralty rule 59 was promulgated, giving the owner of a vessel proceeded against the right to implead any other vessel contributing to the same collision, to enable the court to enter such decree "as to law and justice shall appertain." But, where the other vessel cannot be brought in because not within the jurisdiction, such accidental fact cannot change the legal right of the libeled vessel, and, where she is compelled to pay the entire damage, she is subrogated to the rights of the original damage claimant, and may bring an independent suit against the other to establish the latter's liability also, and enforce contribution.

2. MARITIME LIENS—WRONGFUL DEATH—STATUTORY ACTION FOR DAMAGES.

The statutes of Michigan giving a right of action for wrongful death, and the water-craft statute, making vessels liable for injuries inflicted by them, do not give a lien for the damages resulting to the next of kin of one killed in a collision upon the vessel in fault; and a suit in rem

in admiralty against the vessel, based on such a claim, cannot be maintained.

In Admiralty. Appeal from the District Court of the United States for the Northern District of Illinois.

This is a libel in rem against the steamer Mariska, filed by the Lake Michigan & Lake Superior Transportation Company of Chicago, the owner of the propeller Jay Gould, in a cause of collision civil and maritime. The libel propounds substantially as follows: On July 25, 1891, the barge Helena, in tow of the tug Havanna, was bound up the Sault river above Sailors' Encampment, near what is known as the "Dark Hole," the Jay Gould being also bound up astern of the Helena. The Mariska was coming down the river. The channel was not more than 300 feet wide, and less than 20 feet in depth. It is charged that by reason of the faulty navigation of the Mariska a collision occurred between the Helena and the Mariska, causing the former to sink, and causing the drowning of one Tumela, a seaman on board of her. In August, 1891, the Orient Transportation Company, of Rockford, Ohio, owner of the Helena, filed its libel in the district court of the United States for the Northern district of Illinois against the Jay Gould and the Mariska, charging that the Jay Gould was responsible for the collision by reason of certain faults stated in the libel, and also charging the Mariska to be in fault and responsible for the collision, assigning, among other things, as faults, the same charges as are contained in the libel here. In that proceeding the Jay Gould was arrested, and was bonded by her owner, the libelant here. The Mariska was not arrested, being not found within the jurisdiction. On the 14th day of January, 1898, the court in that cause pronounced for the libelant, the Orient Transportation Company, the owner of the Helena, and decreed damages in the sum of $16,000, but, finding both the Helena and the Jay Gould to be in fault, decreed that the Helena should recover one-half part of her damages of the Jay Gould. The libelant here, the owner of the Jay Gould, thereupon paid the sum of $8,000,—one-half of such damages,—and the decree was satisfied. The libel propounds that the Mariska and her owner ought to make contribution to the libelant in one-half the amount paid by it, namely, the sum of $4,000, with interest from the date of payment, and also a just proportion of the expenses incurred in the defense of the libel against the Jay Gould. The libel further propounds that the libelant was sued in the district court of the United States for the Northern district of Illinois by the administrator of the seaman Tumela, who lost his life by reason of the collision, and was decreed to pay and did pay the sum of $500, one-half of which sum, the libelant propounds, should be repaid to him by the Mariska. The Mariska did not come within the jurisdiction of the court below until the 14th of January, 1898, when she was arrested under a monition issued upon the libel filed. By an amendment the libel asserts that, by reason of the payment to which the Jay Gould was condemned, it became subrogated to the rights of the owners of the Helena against the Mariska, and that the latter ought to respond by one-half of the amount paid by the libelant. Afterwards exceptions were filed to the libel as amended, as follows: "First, that the cause of action set forth in the said libel is not within the jurisdiction of a court of admiralty; second, that the libelant has no cause of action; third, that there is no decree of court on which to found the said cause of action, and because the decree is solely against the steamer Jay Gould." Afterwards, on the 20th of March, 1900, the court sustained the exceptions, and dismissed the libel. The Mariska (D. C.) 100 Fed. 500.

Robert Rae, for appellant.

Charles E. Kremer, for appellee.

Before WOODS, JENKINS, and GROSSCUP, Circuit Judges.

JENKINS, Circuit Judge, after the foregoing statement of the case, delivered the opinion of the court.

At common law there is said to be no contribution among wrongdoers. We need not inquire whether the rule is without limitation,

or whether it be confined, as was said in Adamson v. Jarvis, 4 Bing. 66, "to cases where the person seeking redress must be presumed to have known that he was doing an unlawful act," or whether, in cases of quasi torts, contribution or indemnity will be enforced, as is suggested in some cases. At the common law, also, one contributing by his act to his own injury may not recover therefor of one by whose negligent act the injury was caused. But such are not the doctrines obtaining in the admiralty. The principle there applied is that "damage by a common fault shall be considered a common loss," to be borne by all those through whose fault the loss was caused. Each wrongdoer must respond for the wrong done, and each must bear the due proportion of the loss caused by the wrongful acts. The principle has long been declared in the English courts of admiralty. There, in cases of collision caused by the fault of two other vessels, the injured party may libel both of the offending vessels in one cause, and obtain full redress; but, if he sue one alone, he can recover only one-half of his damages from the vessel sued. The City of Manchester, 5 Prob. Div. 221. The rule established in this country is, however, somewhat different. Here, if both vessels at fault be impleaded, the libelant has a decree not in solido against both for the full amount of his damage with right of execution in full against one, but a decree for a "moiety of the damages against each vessel, with an alternative right of recourse against either for so much of the moiety adjudged to be paid by the other as he is unable to collect from the latter" (The Alabama, 92 U. S. 695, 23 L. Ed. 763); and, pursuing but one of the offending vessels, he is entitled to a decree for the whole amount of his damage (The Atlas, 93 U. S. 302, 23 L. Ed. 863; The Juniata, 93 U. S.. 337, 23 L. Ed. 930). In the latter case it was remarked that the rights of the claimant of one vessel mulcted in the full amount of the damage against the vessel contributing to the wrong could not be determined in the proceeding. such vessel not being a party thereto. The remark, at the most, is merely suggestive of the opinion of the writer that a remedy exists. The right of contribution in such case has been recognized, as we think, by the courts permitting one vessel in fault, paying damages, to recoup one-half the damages paid from an amount adjudged to another vessel, also in fault. The Hercules (C. C.) 20 Fed. 205, and authorities cited; The Job T. Wilson (D. C.) 84 Fed. 204. In these cases, however, all parties in fault were before the court. The fundamental equitable principle is to equalize the burden among those who should bear it. The North Star, 106 U. S. 17, 1 Sup. Ct. 41, 27 L. Ed. 91. The supposed difficulty arises only when one of the offending vessels is not a party to the proceeding in which fault is adjudged. In such case it is not possible for the court to adjust the equities, or to decree contribution. Does the right of contribution therefore fail? Can it be that the law is incapable to furnish a remedy for a recognized right? Will it be permitted, as at the common law, to one injured by the wrong of two or more, to hold one for the injury, and to absolve the others? We cannot think the courts of admiralty are so weak and so limited in power that they cannot find means to enforce a recognized right. The difficulty and the remedy were considered in an elaborate opinion by

Judge Brown in The Hudson (D. C.) 15 Fed. 162, in which that learned judge says:

"These cases show how firmly established in this country, by the highest authority, is the legal right in admiralty of the several vessels, liable for the same collision, to have the entire loss and damages apportioned equally among them, so far as such an apportionment can be made without injury to the libelant, whenever the parties are before the court, or whenever there is any fund which the court can lay hold of and make tributary to such an apportionment. The right of contribution is thus affirmed, it seems to me, as a substantial legal right, and as such it is entitled to all appropriate and expedient remedies. In effect, while the libelant has a maritime lien upon each vessel in solido for his whole damage, so that both are liable jointly and severally as principals, yet as between themselves the several vessels liable are virtually in the situation of sureties for each other for the payment by each of one-half of the damages; and each vessel, like other sureties in equity, has such a legal interest in the libelant's enforcement of his lien upon the other that the court must, by its decree, carefully protect this interest whenever the parties are before it, and on failure to do so its decree will be reversed. From this well-settled recognition and enforcement of a right of contribution as a substantial legal right, when the parties are before the court, it would seem to result necessarily that, if only one vessel is sued, where another is equally liable, either an independent suit for contribution must be allowed to the latter [former?], or else the other vessel must be brought into the original cause, if that can be done without any substantial injury to the libelant. It would be a gross anomaly to say that the court must, by its decree, recognize and enforce a right of apportionment between several vessels defendant, if they all happen to be parties, but yet has no power to bring in one of them if absent, or to afford a several remedy against it. If the right of contribution depend wholly upon the libelant's happening to sue both vessels instead of one, instead of being a legal right it would be but a mere accident in the cause, dependent solely upon the libelant's option. But I cannot for a moment conceive either that the supreme court would guard and enforce with so much care a right which depended upon accident merely, or that so important and valuable an interest as the right of apportionment in collision cases, where the pecuniary interests involved are usually large,—often amounting to tens or even hundreds of thousands of dollars,—can be suffered to depend upon the arbitrary choice of the libelant as to whether he will sue one or both vessels, or upon his mistake or misapprehension of the facts in supposing only one vessel instead of both to have been in fault; and still less upon his possible collusion with one of the vessels liable to throw the whole burden upon the other."

In that case the court, at the instance of the sole respondent, allowed process against another vessel, charged to be liable for the same injury, that she might be brought in, and contribution by both vessels be decreed. Subsequently, and on March 26, 1883 (112 U. S. 743), the supreme court promulgated rule 59 in admiralty, giving the right to the owner of the vessel proceeded against to implead any vessel contributing to the same collision, with a view to such decree "as to law and justice shall appertain." This rule was declared, as we think, in manifest recognition of the right of contribution, and to enable the courts of admiralty to impose the burden of loss upon all by whom the burden should be borne. The rule did not and could not create a right of contribution. It recognized the right as pre-existing, and to enforce that right declared a practice by which the recognized right might be enforced by the respondent in the proceeding instituted by one injured by the wrong of two or more vessels; so that, before payment, and in promotion of justice, and for the speedy and complete determination of rights, contribution should be decreed. It

is not doubted that under this rule, if the Mariska had been arrested, and impleaded in the proceeding by the owners of the Helena, the court would have decreed the fault of the former,—if she was in fault, —and have equalized the burden as between the Jay Gould and the Mariska, and have decreed contribution. But the latter vessel was without the jurisdiction, and could not, therefore, be brought in. Does the right of contribution therefore fail? Is the right dependent upon the accident of the locality of the vessel at the time of the proceeding? May not the owners of the Jay Gould, having paid the amount decreed, proceed independently against the Mariska? It is said that the two vessels did not come in contact, that both were uninjured, and that neither had a claim against the other arising out of the collision with the Helena. The fact does not meet the issue. The Helena had a lien upon the Mariska for the injury sustained by the negligent collision. The owner of the Jay Gould, also responsible for the injury, paying the damages decreed, is, as we think, thereby equitably substituted in place of the Helena, and subrogated to her rights against the Mariska for the proper proportion of the amount it was compelled to pay. It is the same sort of equity which subrogates an underwriter to the rights of the owner of the vessel insured. Phœnix Ins. Co. v. Erie & W. Transp. Co., 117 U. S. 312, 6 Sup. Ct. 750, 29 L. Ed. 873. We think the right is better placed upon the principle of subrogation than that of a primary original lien growing out of the fact of compulsory payment. It was so considered in The Argus (D. C.) 71 Fed. 891, where it was held that it must appear that the respondent was guilty of fault of which the vessel to whom the libelant had been compelled to respond for the fault could complain. We find no case in which the direct question presented to us here has been determined; but the analogies of the law and the fundamental principles of right point clearly, as we think, to the conclusion that, if fault be established upon the part of the Mariska, she should, in this proceeding, be compelled to bear her proportion of the burden which the wrong imposes. The decree against the Jay Gould does not bind the Mariska, nor is she entitled to the benefit of it, being not a party to the proceeding. As to her, the whole matter is at large; and it will be incumbent upon the appellant here to prove the fault charged. The decree is of moment to establish the fact of compulsory payment of damages by the Jay Gould. Whether, and to what extent, it is binding upon her in a proceeding against a stranger to that decree, we need not here inquire. See O'Shea v. Railroad Co. (C. C. A.) 105 Fed. 559.

In the tenth article of the libel it is propounded that a seaman on board of the Helena was drowned by reason of the negligent collision; that his administrator filed his libel in personam in the court below against the libelant here, as we understand the allegation, for damages given by some state statute; and for one-half of the amount which the libelant was compelled to pay in that proceeding recovery is here sought. This article of the libel cannot be sustained. We have held in The Onoko (herewith decided) 107 Fed. 984, that no privilege or lien upon the vessel arises in such proceeding under the statutes of the states of Illinois and Wisconsin. We are not advised by

107 F.—63

the libel upon the statute of what state that suit was founded. The collision resulting in the death, as we read the libel, occurred within the boundaries of the state of Michigan, and probably the right of recovery was founded upon the statute of that state. We have, therefore, examined those statutes (2 Howell's Ann. St. Mich. p. 2050, c. 287, pars. 8313, 8314; Id. p. 2033, c. 285, par. 8236), and find their provisions not essentially different from those of the statutes of Illinois and of Wisconsin considered in the case of The Onoko, except, it may be said, that the water-craft law of Michigan, purporting to grant liens upon vessels, is not so broad as those of the other states referred to. The decree is reversed, and the cause remanded to the court below, with directions to proceed therein conformably to the views expressed in this opinion.