# THE CONEMAUGH.[1]

### CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE SIXTH CIRCUIT.

No. 97.   Argued December 1, 2, 1902.—Decided March 9, 1903.

1. In 175 U. S. 187, and 178 U. S. 317, this court held that the collision between the Conemaugh and the New York in the Detroit River was the fault of both vessels and judgment was given in favor of the Conemaugh for one half of her damages less one half of the damages of the New York.

In this proceeding *held*, that the New York against which judgments had been entered for damages to the cargo on the Conemaugh could not in this action recoup or set off any part of such damages against, or shift any part of such judgment upon, the owners of the Conemaugh, even though it should result in the New York paying more than fifty per cent of the total loss.

2. The mandate having provided for interest at the same rate that decrees bear in the courts of the State of Michigan, there was no error in view of the statutory provisions as to interest in Michigan, in computing the interest at seven per cent per annum.

---

[1] Docket title—*Union Steamboat Company, claimant of the Propeller New York*, v. *Erie and Western Transportation Company.*

THE facts of this case are fully set out in previous decisions of this court, *The New York*, 175 U. S. 187 ; *Ex parte Union Steamboat Co.*, 178 U. S. 317.

The steamer Conemaugh, owned by respondents, and the propeller New York, owned by the petitioner, collided in the Detroit River, November 11, 1891. The Conemaugh for herself, and as bailee of her cargo, filed a libel against the New York for the sum of $70,000 damages in the District Court for the Eastern District of Michigan. Subsequently certain underwriters of the cargo of the Conemaugh filed an intervening petition in the cause. Subsequently the owners of the New York filed a cross libel against the Conemaugh for $3000 damages sustained by the New York in the collision. No answer was filed to this cross libel.

The District Court held the New York to have been solely in fault, and passed a decree against her. The Circuit Court of Appeals for the Sixth Circuit reversed the decree of the District Court on the ground that the Conemaugh had been solely in fault, and adjudged that her owners pay the owners of the New York, petitioners here, the damages sustained by the New York. The case was then brought here by certiorari, and both vessels were pronounced to have been in fault. The decrees of the lower courts were reversed and the damages caused by the collision ordered to be divided. The following is the material part of the judgment and mandate :

" On consideration whereof, it is now ordered, adjudged and decreed by this court that the decree of the said United States Circuit Court of Appeals in the cause be and the same is hereby reversed ; the claimant of the Conemaugh and the claimant of the New York each to pay one half of all costs in this cause.

" And that the said Erie and Western Transportation Company recover against the Union Steamboat Company $276.75 for one half of the costs herein expended, and have execution therefor.

" And it is further ordered that this cause be and the same is hereby remanded to the District Court of the United States for the Eastern District of Michigan, with direction to enter a decree in conformity with the opinion of this court, with in-

terest from July 3, 1896, until paid, at the same rate per annum that decrees bear in the courts of the State of Michigan."

Upon the return of the case to the District Court that court made its decree in favor of the several intervening underwriters upon the cargo for their respective claims, with interest at seven per cent from July 3, 1896.. ' The court also decreed that the owners of the cargo and their underwriters, other than the intervenors, by reason of the collision, sustained damages in the sum of $19,627.67, "for which the said Erie and Western Transportation Company appears in this suit as trustee only." And it was adjudged and decreed "that said trustee recover from the said Union Steamboat Company and its surety, in trust, for the said owners of and underwriters on cargo, the aforesaid sum of $19,627.67, with interest thereon at the rate of seven per cent per annum, from July 3, 1896, until paid, and that it have execution therefor."

Judgment was also given in favor of the Conemaugh for one half of the damages of that steamer, less one half of the damages of the New York, with interest.

At the hearing in the District Court on the return of the mandate the petitioner "submitted a decree to the effect that both vessels were in fault for the collision, and that the damages resulting therefrom be equally divided between the Erie and Western Transportation Company, owner of the Conemaugh, and the Union Steamboat Company, owner of the New York; that such damages amounted in all to the sum of $74,319.49, of which certain intervening underwriters of the cargo were entitled to, and recovered from the steamboat company, $19,841.56; that the transportation company, as trustees, for the underwriters and owners of the cargo of the Conemaugh, not intervening, suffered damages in the sum of $19,627.67; that, as owner of the propeller, it had suffered damages in the sum of $30,508.46, aggregating the sum of $50,136.13; that the transportation company recover of the petitioner one half of $50,136.13; less one half the sum of $19,841.56, decreed to be paid to the intervening petitioners, etc.

"The court, however, declined to enter this decree; refused to permit the petitioner to recoup any sum that it might pay

to the owners or underwriters of the cargo of the Conemaugh, from any sum that was due from the steamboat company for damages sustained by the Conemaugh, so that such company was compelled to pay of the total damages about seventy-six per cent instead of fifty per cent." ·178 U. S. 317, 318.

The action of the District Court was affirmed by the Circuit Court of Appeals, 108 Fed. Rep. 102, and the case was then brought here.

*Mr. C. E. Kremer* for petitioner. *Mr. F. C. Harvey* and *Mr. W. O. Johnson* were on the brief.

*Mr. Harvey D. Goulder* for respondent. *Mr. S. H. Holding* and *Mr. F. S. Masten* were on the brief.

*Mr. Wilhemus Mynderse* for intervenors. *Mr. F. H. Canfield* was on the brief.

MR. JUSTICE MCKENNA, after making the foregoing statement, delivered the opinion of the court.

1. One main and several subsidiary propositions are asserted by petitioner. The main proposition is that in all cases of collision, if both vessels are in fault, the damages resulting are to be equally divided between the owners of the vessels.

The subsidiary propositions are that if one of the offending vessels pay more than half the damages to a third or innocent party she may recoup or set off such excess against any claim for damages which the other vessel may have without bringing in the other vessel as a co-defendant under admiralty rule 59, or filing other pleadings than an answer to the libel. In such case it is insisted that all the parties are before the court. And further, that it is not necessary upon an appeal to the Circuit Court of Appeals, or to this court, that the pleadings show a demand for recoupment—the hearing in both courts being a trial *de novo*.

The main proposition asserted may be conceded. It was the basis of our decision when the case was here on the first certio-

rari and determined the judgment rendered. 175 U. S. 187. And if under some circumstances the other propositions could be applied, (which is not necessary to decide,) they cannot be under the circumstances of this case. The petitioner made no claim for a division of damages upon the original trial of the case. It asserted its own innocence and the entire guilt of the Conemaugh, and submitted that issue for judgment. It sought to escape all liability, not to divide liability, and on the issues hence arising judgments were entered against it, not only for the Conemaugh, but for the cargo owners, some having intervened, others still being represented by the Conemaugh. Petitioner maintained the same attitude in the Circuit Court of Appeals and in this court. After the decision in this court it changed its attitude, and for justification says it had no earlier opportunity to do so. It urges that the decision of the District Court was completely against it ; the decision of the Circuit Court completely for it ; and that the judgment from which its right of recoupment arose was rendered by this court.

But the controversy as presented by the pleadings was not only between the Conemaugh and the New York, but between the latter and cargo, and this court did not disturb the judgment obtained by the cargo owners against the New York. Explaining our decision we said :

" The only questions decided were as to the respective faults of the two vessels, and the claim of the underwriters upon the Conemaugh's cargo, that they were entitled to a recovery to the full amount of their damages against the New York, notwithstanding the Conemaugh was also in fault for the collision. This claim was sustained, and directions given to enter a decree in conformity to the opinion of this court."

The decree against it, the New York now seeks to shift in part to the owners of the Conemaugh. Indeed, not to shift it, but virtually to vacate it and put the claims of the cargo owners into controversy with the Conemaugh. This, we think, should not be done. The cargo owners' judgments were affirmed by this court, as we have seen, and they are none the less entitled to them under the circumstances of this record, although as to some of them they were represented by the Conemaugh. The

New York, having been in fault, was responsible to the cargo, and if, as between her and the Conemaugh, she have a claim for recoupment, the way is open to recover it. We think that the District Court rightly construed our mandate.

2. Our mandate directed that a decree be entered " with interest from July 3, 1896, until paid, at the same rate per annum that decrees bear in the courts of the State of Michigan." The District Court and the Circuit Court of Appeals found the rate to be seven per cent. This is assigned as error.

The statute which provided for interest on judgments and decrees in Michigan at seven per cent was enacted in 1838, and has been carried forward with amendments into the various compilations of the statutes, and appears as section 4865, Compiled Laws of Michigan of 1897. It is as follows:

" Interest may be allowed and received upon all judgments at law, for the recovery of any sums of money, and upon all decrees in chancery for the payment of any sums of money, whatever may be the form or cause of action or suit in which such judgment or decree shall be rendered or made ; and such interest may be collected on execution, at the rate of seven per centum per annum: *Provided*, That on a judgment rendered on any written instrument, having a different rate, the interest shall be computed at the rate specified in such instrument, not exceeding ten per centum."

This section, it is insisted by appellants, was repealed by a statute passed in 1891, which statute was entitled " An act to regulate the interest of money on account, interest on money, judgments, verdicts, etc.," and provided as follows:

" SEC. 1. The People of the State of Michigan enact: That the interest of money shall be at the rate of six dollars upon one hundred dollars for a year, and at the same rate for a greater or less sum, and for a longer or shorter time, except that in all cases, it shall be lawful for the parties to stipulate in writing, for the payment of any rate of interest not exceeding eight per cent per annum: *Provided*, That this act shall not apply to existing contracts whether the same be either due, not due, or part due."

" SEC. 4. All acts or parts of acts contravening the provisions of this act are hereby repealed."

Subsequently the rate was reduced to five per cent by a statute passed May 25, 1899, which reads as follows:

" SEC. 1. That section one of act number one hundred and fifty-six of the Public Acts of eighteen hundred and ninety-one, entitled ' An act to regulate the interest of money on account, interest on money, judgments, verdicts, etc., the same being compiler's section one thousand five hundred ninety-four of volume three of Howell's Annotated Statutes and section four thousand eight hundred fifty-six of the Compiled Laws of eighteen hundred ninety-seven, be and the same is hereby amended to read as follows:

" SECTION 1. The People of the State of Michigan enact: That the interest of money shall be at the rate of five dollars upon one hundred dollars for a year, and at the same rate for a greater or less sum, and for a longer or shorter time, except that in all cases it shall be lawful for the parties to stipulate in writing for the payment of any rate of interest, not exceeding seven per cent per annum: *Provided,* That this act shall not apply to existing contracts, whether the same be either due, not due or part due."

According to its title the act is one to regulate the interest of money on account and interest on money judgments. Section one, however, provides only " that the *interest of money* shall be at the rate of five dollars upon one hundred dollars for a year." It is urged, however, that section one must take meaning from the title of the act, and that by "interest of money" is meant "interest of money on account" and "interest on money judgments," and having that meaning it repeals section 4865, *supra.* But money on account and money judgments are distinguished in the title, and it is hard to suppose that the former was intended to include the latter in the body of the act. They are distinguished also in the prior statutes. " Interest of money " was provided for in section 3 of the act of 1838 in substantially the same language as in the acts of 1891 and 1899, and, it is certain, that it was not intended thereby to include interest on judgments and decrees. The

latter were provided for in section eight of the act of 1838, which became section 4865, and as such has been given a place in the compiled laws of the State ever since.

If it is anomalous, as urged by counsel and as observed by the Circuit Court of Appeals, for legal interest in the State to be fixed at five per cent, and judgments left to bear seven per cent, we cannot correct the anomaly. Nor can we regard the words "interest of money" to have been suddenly given a meaning in 1891 or 1899 different from that which they had borne for over fifty years in the statutes of the State with the intention to work by implication the repeal of a provision with which for the same length of time they were regarded as consistent.

*Decree affirmed.*