ERIE & W. TRANSP. CO. v. ERIE R. CO.

(Circuit Court of Appeals, Seventh Circuit.  August 1, 1905.)

No. 1,137.

**1. ADMIRALTY—JURISDICTION—SUIT TO ENFORCE CONTRIBUTION.**

A court of admiralty has jurisdiction of an independent suit to enforce contribution in favor of one of two vessels in collision against the other because of damages to cargo owners arising out of such collision, which the libelant has been compelled to pay, upon the alleged ground that both were in fault, since the right to such contribution, where it exists, is one given by and peculiar to the admiralty law.

**2. SAME—RES JUDICATA—CONCLUSIVENESS OF DECREE IN SUIT FOR COLLISION.**

A final decree in a suit for collision, in which both vessels and all parties in interest are before the court, which determines the fault for the collision and the damages and apportions the same between the two vessels, is conclusive of all questions relating to the rights and liabilities of the respective vessels arising out of such collision, and a court of admiralty is without jurisdiction to entertain an independent suit subsequently brought by one of the vessels against the other to enforce contribution to cargo damage which was refused in the primary suit, although such refusal was grounded upon the lack of appropriate pleadings.

Appeal from the District Court of the United States for the Northern District of Illinois.

This appeal is from a decree of the District Court, sitting in admiralty, in favor of the appellee, Erie Railroad Company, as libelant, for recovery of $28,815, against the steamer Conemaugh and the appellant Erie & Western Transportation Company, as claimant. The libel is in rem, and propounds, in effect, that Erie Railroad Company is successor in interest to Union Steamboat Company, as owner of the propeller New York; that a collision occurred October 21, 1891, between the propellers New York and Conemaugh, resulting in the sinking of the Conemaugh; that proceedings thereupon arose in admiralty, which are detailed, wherein it was ultimately adjudicated that both vessels were at fault for the collision, and each was liable for a moiety of the damages which ensued; that the final decree therein condemned the New York to pay the entire damage of the Conemaugh's cargo, without recoupment or allowance for one-half thereof chargeable to the Conemaugh, because no pleading was filed demanding such recoupment; that the libelant accordingly overpaid $19,734.61, which should have been borne by the Conemaugh and her owners, and was thus "relegated to its separate remedy against the Conemaugh"; and it is entitled to and prays recovery for such amount and interest thereon. The prior proceedings in admiralty upon which the libel and decree rest the right of recovery are notable for their course and duration, and a summary is needful for understanding of the theory on which recovery was sought and allowed. As the appellant's brief well and concisely recites these facts (approved on behalf of the appellee as "substantially correct"), such recital is incorporated in this statement, as follows:

"On the 21st day of October, 1891, a collision occurred in the Detroit river between the propellers New York, owned by the appellee's predecessor, the Union Steamboat Company, and the Conemaugh, owned by the appellant. The collision resulted in the sinking of the Conemaugh, with great damage to her cargo of miscellaneous package freight, and in some small damage to the New York. November 11, 1891, appellant, as owner of the Conemaugh and bailee of her cargo, filed libel in the United States District Court for the Eastern District of Michigan against the New York. The Union Steamboat Company answered for the New York, denying all liability, and attributing the disaster solely to the fault of the Conemaugh; also setting up the damage sustained by the New York as about $3,000. Subsequently the Union Steamboat Company filed a cross-libel for the physical damage to the New

York, but no process was issued and the decree dismissing the cross-libel was not appealed from by the Union Steamboat Company. On hearing both steamers were held at fault. 53 Fed. 553. Rehearing was had, resulting in the New York being held solely in fault. At this stage the British & Foreign Marine Insurance Company, Limited, the Insurance Company of North America, the Union Insurance Company, and the Marine Insurance Company, as insurers on parts of the Conemaugh's cargo, having paid the loss, intervened for their interest, alleging that the sole fault lay with the New York. On January 25, 1895, the parties stipulated that the damage sustained by the New York amounted at that time to $3,391.19. The other damages having been determined, decree was entered in favor of appellant for its own damage and as trustee for the cargo damage; the decree providing, however, that the amount allowed for cargo insured by the intervening companies be paid to them. The owner of the New York appealed. The United States Circuit Court of Appeals for the Sixth Circuit reversed the decree of the District Court and held the propeller Conemaugh solely at fault, dismissed the libel and the petitions of the insurers, and ordered decree against this appellant in personam for the New York's damage. 82 Fed. 819, 27 C. C. A. 154. Petition for rehearing was denied. This appellant and the intervening insurers petitioned the Supreme Court for writ of certiorari. The petition was granted, and on hearing both vessels were held at fault. 175 U. S. 187, 20 Sup. Ct. 67, 44 L. Ed. 126. Mandate thereupon issued to the District Court directing a decree in accordance with the opinion. Decree was entered in the District Court, dividing the damages sustained by the steamers, which, as of July 3, 1896, required the owner of the New York to pay to the appellant herein in its own right $13,083.33, with interest at 7 per cent. from that date until paid, and required the New York to pay the entire cargo damage. The insurers on cargo which had already intervened were decreed $19,841.56. The balance of the cargo damage, amounting to $19,627.67, was decreed to appellant as trustee. The owner of the New York then petitioned the Supreme Court for writ of mandamus, directed to the District Court for the Eastern District of Michigan, to require said court to enter a decree which would divide the damage to cargo equally between the New York and the Conemaugh. Writ in the alternative was issued, answered, and on hearing the petition was dismissed, as the decree entered was in accordance with the mandate. Ex parte Union Steamboat Co., 178 U. S. 317, 20 Sup. Ct. 904, 44 L. Ed. 1084. Although the application to the Supreme Court was to enter decree which would divide the cargo damage equally to the two vessels, the question of recoupment was argued. The Supreme Court said, among other things, that no question of recoupment was presented to or passed upon by them in deciding the case, and that, if the District Court erred in not allowing it, it was matter for appeal. Thereupon the owner of the New York appealed from the decree so entered. Appellant [here] moved dismissal of the appeal, on the ground generally that the Circuit Court of Appeals was without jurisdiction to review in any manner the decree as it had been entered only in conformity with the mandate, and so was the decree of the Supreme Court. The motion to dismiss was denied. 104 Fed. 561, 44 C. C. A. 38. The appeal was then argued and the decree below affirmed. 108 Fed. 102, 47 C. C. A. 232. The Union Steamboat Company then (in its turn) petitioned the Supreme Court for a writ of certiorari, which was granted. The cause was again tried in the Supreme Court, and the decree which had been entered by the District Court on its mandate was affirmed. 189 U. S. 363, 23 Sup. Ct. 504, 47 L. Ed. 854. While in the Supreme Court the last time the insurers, who had covered that portion of the cargo for which this appellant had continued thereto as trustee, intervened. May 16, 1901, after dismissal of the petition for mandamus by the Supreme Court, the owner of the New York paid so much of the cargo damage as the decree required to be paid to the interveners, and after the affirmance of the decree by the Supreme Court the remaining damage and costs were paid as provided by the decree, and the case closed."

Objections to the libel, for want of jurisdiction and of res adjudicata, were raised by exceptions, and renewed by the answer. The answer further sets up, by way of defense, the bill of lading under which the cargo of the Conemaugh was carried, which contained provisions (1) giving to the carrier the

benefit of insurance on the cargo—such insurance being effected and the loss paid to the shipper—and provided against liability therefor, unless (2) written claim was made within 30 days, and (3) action was brought for any loss within three months, and it is averred that no claim was so made or action brought. No issues of fact arose, as a stipulation was filed which brought in the printed records in the prior proceedings as evidence, and admitted the averments of the answer respecting the terms of lading, fact of insurance, and payment of loss to the shipper, and that no claim was made by shipper or insurer, or suit brought against the Conemaugh for the cargo loss, within the limitations of the bill of lading.

Harvey D. Goulder and Frank S. Masten, for appellant.
C. E. Kremer, for appellee.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts). When the present libel was filed, to enforce further contribution against the Conemaugh for damages which the New York was condemned to pay, the liability arising out of the collision had been in litigation between these steamers, with cargo representatives impleaded, for upwards of 12 years. The controversy was various in results during its progress and prolific in contributions to judicial reports, including three unanimous opinions, respectively, in the Circuit Court of Appeals and the Supreme Court in its course. It resulted in a final adjudication of mutual fault, awarding all damages arising out of the collision, with recovery against the New York alone for cargo damage and equal division of the aggregate of damages to the steamers; so that, on the face of this record, it would seem that no issuable liability between the steamers could have escaped judicial settlement. Nevertheless, a novel and interesting question is presented for review, without precedent for the relief sought by this libel, under analogous conditions, and the contention upheld by the decree is not without seeming force under the general authorities cited and intimations in the opinions upon final appeal from the former decree. Primarily, however, jurisdiction is challenged to entertain the libel, in any view, as a claim to enforce an assumed right of contribution arising out of the payment by the New York of the entire cargo damage when mutual fault was adjudged, and the admiralty cognizance of such subject-matter for independent relief must be ascertained before inquiry is open whether jurisdiction can be exercised or relief be extended in the case at bar.

1. The broad jurisdictional objection is thus stated in the brief on behalf of the appellants: "That the right of contribution, when it exists, cannot be asserted in the admiralty, either in rem or in personam." Were the general proposition thus advanced an open question, and not clarified and ruled by the opinion of this court in The Mariska, 107 Fed. 989, 47 C. C. A. 115, its solution for the objects of the present case would not be free from difficulty in the light of the general authorities cited. But in that instance jurisdiction was upheld of an independent libel in rem, filed by the owners of the steamer Jay Gould against the steamer Mariska, to enforce so-called contribution for damages charged against and paid by the Jay Gould in a prior proceeding, wherein the Jay Gould was the sole respondent, for the alleged mutual fault of that steamer and the

Mariska in causing the collision. In effect, it was ruled that the contribution sought, which was the subject-matter of the libel, was well recognized as a liability arising under the admiralty law, and as such was cognizable, not only as an incident to the primary cause for recovery of damages for the fault of both, but through an original libel to enforce the liability, when not otherwise enforceable. This view we believe to be in harmony with the general line of American authorities, departing from the narrow interpretation which prevails in England and adopting that of the original admiralty jurisdiction, which was "interpreted by a more enlarged view of its essential nature and objects." Insurance Co. v. Dunham, 11 Wall. 1, 24, 20 L. Ed. 90. The case of The Mariska plainly authorizes admiralty cognizance of an independent libel for contribution; and this irrespective of the question whether the enforcement rests on the doctrine of subrogation to a lien in favor of the cargo, as there indicated, or upon the alleged liability to contribute by way of equalizing the burden for the fault and injuries. Vide The North Star, 106 U. S. 17, 22, 1 Sup. Ct. 41, 27 L. Ed. 91. In reference to the argument that rights resting on and merged in a decree are no longer maritime, in the jurisdictional sense, it may be observed that the rule is settled otherwise in early cases in admiralty (Penhallow v. Doane's Admr., 3 Dall. 54, 86, 1 L. Ed. 507; Jennings v. Carson, 4 Cranch, 2, 21, 2 L. Ed. 531; The Enterprise, 2 Curt. 317, Fed. Cas. No. 4,497; The Centurion, 1 Ware, 490, Fed. Cas. No. 2,554), though it well may be that such rule is applicable only to relief by way of enforcing the decree. The general contention that a libel for contribution cannot be entertained is overruled.

2. The propositions on which the libel and decree rest are substantially these: That the maritime law creates an absolute liability against each of the contributors to a collision, mutually at fault, to bear an equal share of the resulting loss to vessels and cargo; that because the New York was condemned in the prior litigation with the Conemaugh and the representatives of her cargo, among other liabilities, to pay the entire cargo damage, without recoupment or allowance for any share of such damage chargeable to the Conemaugh for her adjudged mutual fault—no pleading to that end having been filed by the New York—the fact of such adjudication and of payment to the cargo representatives created ipso jure liability against the Conemaugh to reimburse one-half of the amount so paid; and that, accordingly, exemption of the Conemaugh from liability to the cargo owners, under the bills of lading, furnishes no defense against such reimbursement by way of contribution. This contention assumes that the admiralty rule, that both vessels at fault for a collision must bear the damage in equal parts, creates distinct and absolute liability for each element of damage entering into the adjudication and payment; so that, failing such equal division of the cargo damage in the primary suit between the vessels, the charge to and payment by the New York alone raised an independent cause of action against the Conemaugh to pay one-half the amount, though not obligated to the damnified cargo representatives for any part of such injury.

The theory on which The Mariska, supra, proceeded is thus adopted,

in so far as it sanctions independent right of action for unquestionable contributory liability, but the further doctrine of that decision, that the right arises out of subrogation, is necessarily denied. Intimations of independent remedy to enforce contribution, in the event of actual liability of the Conemaugh for cargo damage, which appear in the opinions of the Circuit Court of Appeals on final appeal of the New York in the primary suit (The New York, 108 Fed. 47, 102, 107, 47 C. C. A. 232), and of the Supreme Court upon certiorari (The Conemaugh, 189 U. S. 363, 368, 23 Sup. Ct. 504, 47 L. Ed. 854), are assumed to sanction this theory and proceeding, although no sanction appears in either of these opinions for liability upon the part of the Conemaugh to cargo damage, if not liable to the cargo owners, and the opinion of the Circuit Court of Appeals clearly implies that the Conemaugh was not chargeable in such event. The extreme contention of absolute liability, however, notwithstanding both the failure to obtain division in the prior litigation and nonliability of the Conemaugh to the cargo representatives, is pressed in support of the present decree, and it is obvious that it can rest on no other ground.

As a general proposition of maritime law, with the effect of the adjudication left out of consideration, it is doubtless the doctrine of the cases referred to—The North Star, 106 U. S. 17, 1 Sup. Ct. 41, 27 L. Ed. 91, and the Chattahoochee, 173 U. S. 540, 19 Sup. Ct. 491, 43 L. Ed. 801—that the fact alone of nonliability of the Conemaugh to her cargo owners does not exonerate her from contributory liability to the New York, if the New York is, nevertheless, liable for such damages. Whether the doctrine of this line of authorities—which is peculiar to the maritime law and not of equitable origin—could be deemed applicable, as an original proposition, to the insurance provision in the instant bill of lading, either to charge the one steamer with full recovery in favor of the insurers or to enforce contribution against the other, is a question not arising upon this review nor open to consideration, in our understanding of the effect of the prior adjudication, either in the admiralty or under the general law.

The general rule of admiralty, preserved from the ancient text of the law, is well settled in collision cases, that each vessel in fault is equally liable for injuries arising and must bear the damages equally, without reference to the degree of fault. The North Star, 106 U. S. 17, 20, 1 Sup. Ct. 41, 27 L. Ed. 91, and authorities reviewed. So, contrary to the rule at common law, one of the parties at fault can maintain a libel against the other for apportionment of the damage in conformity with such maritime rule. For cargo damage the parties injured may proceed against one offending vessel and obtain decree against it for the entire damage, unless the other, jointly liable, is brought into the proceeding, but, when both are before the court, the entire damages arising from the mutual fault are added together, and the amount is apportioned in equal parts to be borne equally by them. The Atlas, 93 U. S. 302, 313, 317, 23 L. Ed. 863. When liability against one is adjudicated without the presence of the other, the apportionment for mutual fault cannot be made, and the liability can then be apportioned in further proceedings as held in The Mariska, supra.

The rule, as defined under all the authorities referred to, plainly intends apportionment of the damages between the joint contributors at fault in a single adjudication. Thus in the instructive opinion of Mr. Justice Bradley, in The North Star, 106 U. S. 17, 20, 22, 1 Sup. Ct. 41, 27 L. Ed. 91, the distinguishing feature of the rule is pointed out, that the authorities recognize only an equal division of the aggregate joint damage, and not a liability of one to the other for specific damages inflicted; that all concur in the view that "the entire damage to both ships is added together in one common mass and equally divided between them, and thereupon arises a liability of one party to pay to the other such sum as is necessary to equalize the burden." It was there held, accordingly, that the statutory limitation of liability on the part of one was not applicable until the aggregate of joint damage was ascertained, and then only "to avoid payment pro tanto of the balance found against such party." So, in The Chattahoochee, 173 U. S. 540, 553, 19 Sup. Ct. 491, 43 L. Ed. 801, this language of the North Star Case is adopted as equally applicable to cargo damage involved in the collision; and the provision known as the Harter act, touching cargo liability of the carrier, was held inapplicable until the aggregate injury was ascertained and apportioned under the rule. Of like effect is the case of The George W. Roby, 49 C. C. A. 481, 111 Fed. 601, 614.

The prior proceedings in admiralty, averred in the present libel, were of the character contemplated by the rule for ascertaining, dividing, and charging the liability between all parties in interest. The damages suffered by the steamers, respectively, and the damage to the cargo of the Conemaugh were assessed, and, while aggregate damages to both steamers were apportioned equally, the decree charges the cargo damages against the New York alone. Equal division as well of this cargo damage was strenuously sought on behalf of the New York, in the final hearing before the trial court and in both reviewing tribunals, upon the same argument and citations which are urged upon this appeal, but such relief was denied. Like contention is renewed here, for independent relief, upon averment that the burden of cargo damage was thus imposed for want of a pleading in the case, setting up the claim by way of recoupment. Be this as it may, the fact remains that the decree passed, touching all interests, with all damages apportioned as stated. In other words, the respective rights and liabilities of the parties arising out of the collision were thus adjudicated in admiralty, with all parties before the court and all issues heard as raised by them, respectively. These conclusions thereupon are unmistakably expressed in the opinions and carried out in the final decree: (1) That both steamers were at fault for the collision; (2) that the damages suffered by both steamers were ascertained, the aggregate sum divided, and so charged in equal shares; (3) that the underwriters of the cargo, being innocent of the fault of either vessel, are entitled, as they insisted, "to a recovery to the full amount of their damage against the New York, notwithstanding the Conemaugh may also be in fault for the collision" (175 U. S. 209, 20 Sup. Ct. 67, 44 L. Ed. 126), and this amount is ascertained and so charged; (4) that such provision in the decree conformed to the mandate of the Supreme Court, and, if the trial court "erred in refusing to

allow recoupment, the remedy is by appeal" (Ex parte Union Steamboat Co., 178 U. S. 320, 20 Sup. Ct. 904, 44 L. Ed. 1084); and, finally, in effect (5), that division of cargo damage was not a right arising ipso jure out of the fact of contributory fault on the part of the Conemaugh; and without issue raised thereupon "of liability of the Conemaugh to her cargo underwriters" it could not be "summarily assumed that because she was found in fault, and liable to the New York for one-half of her damages, she is also liable to the underwriters upon her cargo," and thus foreclose defense under the "special stipulations in her bills of lading," which are asserted on behalf of the Conemaugh as written therein "to set up against the claims of underwriters." The New York, 108 Fed. 102, 47 C. C. A. 232; affirmed in The Conemaugh, 189 U. S. 363, 23 Sup. Ct. 504, 47 L. Ed. 854.

The adjudication of liabilities arising out of the collision and apportionment thereof which thus appear is, as we believe, the proceeding in admiralty contemplated by the rule (as defined in The North Star, supra, and The Chattahoochee, supra), for all cases of maritime collision. It is unquestionably res judicata upon all matters involved in that contest. The right of the underwriters to recover the entire cargo damage against The New York, irrespective of fault on the part of The Conemaugh, is there settled. However questionable it may appear, whether such amount was justly recoverable in view of the provision now disclosed in the bill of lading, giving the Conemaugh the benefit of insurance on her cargo—that is, whether the introduction of such contract would not have served as a defense, in whole or in part, when the Conemaugh was found in fault, on the authority of Phœnix Insurance Co. v. Erie & Western Transportation Co., 117 U. S. 312, 324, 325, 6 Sup. Ct. 750, 29 L. Ed. 873, and other cases—nevertheless, full recovery was awarded and is now incontestible.

We are of opinion that such adjudication leaves no issue open in the admiralty, between these parties, arising out of the collision; that jurisdiction therein cannot be exercised to enforce equalization of the burdens imposed upon one and the other party in the former decree, in contravention of its express terms; although it may extend to the enforcement of contribution against one not involved in such decree for recognized joint liability within its contemplation. The remark in the final opinion of the Supreme Court (The Conemaugh, 189 U. S. 363, 367, 23 Sup. Ct. 504, 47 L. Ed. 854), in reference to the modification of the decree there sought, if applicable to the like contention for review, is decisive of the present libel, namely:

"The decree against it, the New York now seeks to shift in part to the owners of the Conemaugh. Indeed, not to shift it, but virtually to vacate it and put the claims of the cargo owners into controversy with the Conemaugh. This, we think, should not be done."

The present decree, in effect, not only accomplishes the modification of the former decree, which was thus refused by both appellate tribunals, but bars contest of liability on the part of the Conemaugh to the cargo owners. Surely, if the appellate jurisdiction is inadequate for such object, it is not within the co-ordinate jurisdiction of another court, sitting

in admiralty, to grant relief from the terms of the prior decree, or to reopen the controversy.

Assuming for the inquiry (with no intimation of such conclusion from the facts) that equities appear in any phase of the case for charging either the owners of the Conemaugh or the underwriters with a share of the liability thus imposed upon the New York, the equities so assumed arise out of the conduct and results of the litigation in reference to such claim of cargo damage, and not out of the collision, and so treated are not cognizable in admiralty, apart from a primary cause to establish the respective rights and liabilities of the parties concerned. Courts of admiralty are not vested with the powers of a court of equity, though equitable principles are observed and equities recognized, when the primary cause is within their limited jurisdiction. The Eclipse, 135 U. S. 599, 608, 10 Sup. Ct. 873, 34 L. Ed. 269, and cases cited. If the supposed right to enforce contribution exists, the way is not afforded in the admiralty forum.

In no aspect of the case, therefore, can we discover ground for the exercise of jurisdiction in the admiralty to intervene for the relief granted by the decree from which this appeal is brought, or for any form of relief under the circumstances stated in the libel. Accordingly, the decree of the District Court is reversed, with direction to dismiss the libel as not stating a case for relief in the admiralty.