GREAT LAKES TOWING CO. v. MASABA S. S. CO. et al.

(Circuit Court of Appeals, Sixth Circuit. December 5, 1916.)

No. 2858.

1. NAVIGABLE WATERS ⊚⟾26(3)—BRIDGES—INJURY FROM COLLISION WITH DRAWBRIDGE.

The failure of the owner or operator of a drawbridge over a navigable stream to promptly open the draw upon reasonable signal for the passage of a boat, as required by Act March 23, 1906, c. 1130, § 4, 34 Stat. 85 (Comp. St. 1913, § 9964), raises a presumption of negligence, which such owner or operator must overcome in a suit against it for injury to a passing vessel.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 152–166; Dec. Dig. ⊚⟾26(3).]

2. NAVIGABLE WATERS ⊚⟾20(8)—BRIDGES—INJURY FROM COLLISION WITH DRAWBRIDGE—NEGLIGENT MANAGEMENT.

The failure of the owner of a drawbridge to provide means by which the operator can signal approaching boats in the daytime is in itself evidence of negligence.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. § 96; Dec. Dig. ⊚⟾20(8).]

---

⊚⟾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

237 F.—37

3. NAVIGABLE WATERS ⬤⟶26(3)—BRIDGES—INJURY TO VESSEL FROM COLLISION WITH DRAWBRIDGE.

Injury to a steamer by reason of her mast striking the partly opened draw of a bridge held due to the concurring faults of the bridge operator in failing to fully open the draw and the towing tug in not keeping the steamer under control after the master saw that the draw was only partly raised.

[Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 152–166; Dec. Dig. ⬤⟶26(3).]

4. ADMIRALTY ⬤⟶88—SUIT FOR INJURY TO VESSEL—RIGHT TO ENFORCE CONTRIBUTION BETWEEN RESPONDENTS.

The owner of a vessel injured by the concurring fault of a towing tug and the owner of a drawbridge is entitled in admiralty to a decree for half damages against each, with the right to collect from either any deficiency arising through default in payment by the other.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 627–634; Dec. Dig. ⬤⟶88.]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; John H. Clarke, Judge.

Suit in admiralty by the Masaba Steamship Company, owner of the steamer Joe S. Morrow, against the Great Lakes Towing Company and the Cleveland Terminal & Valley Railroad Company. Decree for libelant against the Towing Company alone, which appeals. Reversed.

Goulder, White & Garry, of Cleveland, Ohio (Harvey D. Goulder and Robert G. McCreary, both of Cleveland, Ohio, of counsel), for appellant.

Holding, Masten, Duncan & Leckie, of Cleveland, Ohio, for appellee Masaba S. S. Co.

Tolles, Hogsett, Ginn & Morley, of Cleveland, Ohio, for appellee Cleveland Terminal & V. R. Co.

Before WARRINGTON and KNAPPEN, Circuit Judges, and McCALL, District Judge.

WARRINGTON, Circuit Judge. On August 26, 1913, the steamer Joe S. Morrow, while in tow of two steam tugs, sustained damages through collision with the partially raised lift of a bascule bridge maintained by the Cleveland Terminal & Valley Railroad Company across the old bed of the Cuyahoga river at Cleveland, Ohio. The Morrow and the tugs were owned, respectively, by the Masaba Steamship Company and the Great Lakes Towing Company. The owner of the Morrow sought to recover these damages through libel in admiralty against the towing company and the railroad company. The towing company in its answer presented exceptions to certain alternative charges of negligence set up in the libel, but the exceptions are not mentioned either in the assignments or the briefs. At the trial both respondents disavowed any complaint of negligence on the part of the Morrow, and the answers were thus confined to charges made by each of the respondents against the other of negligent conduct which caused the damages in issue. At the close of the testimony offered by the

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

towing company, the trial court, of its own motion and without hearing from the railroad company, found the towing company liable and entered a decree against it for an agreed amount of damages. From this decree the towing company appeals against both the Masaba Company and the railroad company.

[1] Upon careful examination of the evidence we see no reason to disturb the trial judge's conclusion so far as it finds negligence of the towing company directly contributing to the damages sustained by the vessel in tow. The facts here are distinguishable from those found in The Louise Rugge (D. C.) 234 Fed. 768, 770; but under the present record we think the railroad company should have been held jointly liable with the towing company for such damages. Congress has distinctly imposed positive duties touching the management of drawbridges, including, we think, such bridges as that of the railroad company. Act Aug. 18, 1894, c. 299, 28 Stat. 338, 362, § 5 (Comp. St. 1913, § 9973), and Act March 23, 1906, 34 Stat. 84, 85, § 4, provides, among other things:

"If the bridge shall be constructed with a draw, then the draw shall be opened promptly by the persons owning or operating such bridge upon reasonable signal for the passage of boats and other water craft."

Admittedly, the old river bed in question is navigable. It results that upon receiving or being reasonably chargeable with notice of the approach of a vessel, failure either promptly to open the draw or the lift of a bridge maintained across such a river as this, or, if the facts justify, seasonably to notify the approaching vessel that failure to open or delay in doing so is unavoidable, raises a presumption of negligence which the owner or operator of the bridge must overcome. Dorrington v. City of Detroit, 223 Fed. 232, 245, 246, 138 C. C. A. 474 (C. C. A. 6); Clement v. Metropolitan Railroad Company, 123 Fed. 271, 273, 274, 59 C. C. A. 289; Pennsylvania R. Co. v. Central R. Co. (D. C.) 59 Fed. 190, 192, per Judge Addison Brown, affirmed 59 Fed. 193, 8 C. C. A. 86 (C. C. A. 2); Hartley v. American Steel Barge Co., 108 Fed. 97, 98, 47 C. C. A. 229 (C. C. A. 8). This presumption, instead of being overcome here, was strengthened by the evidence.

While the Morrow was being towed down the river, with the Abbott as its pilot tug and the Alva as the steering tug, the Abbott sounded the customary signals for opening the draw of the Willow Street bridge and also for raising the lift of the railroad bridge. However, when the Abbott came within some 500 feet of the railroad bridge, her captain noticed that the lift of the bridge was not raised to its full height, but was standing at an angle of from 60 to 70 degrees; yet he gave no further attention to the bridge until it was too late to avoid collision between the mainmast of the Morrow and the lift of the bridge. The captain of the Abbott confessedly relied upon the operator of the bridge to cause the lift fully to be raised in time to afford a clearance for the vessel in tow. The lift of the bridge was operated by electricity, and could be and usually was raised quickly for the passage of boats. The collision occurred between 8 and 9 o'clock in the morning, and the day was bright and clear. No

sufficient reason is disclosed to excuse the operator for failing, if he did fail, to hear the signals of the Abbott; and yet the operator gave no signal of any sort to the Abbott that the lift would not be seasonably raised to its full height.

[2, 3] True, there is testimony tending to show that, apart from lights that were used at night to show that the lift was either closed or open, there was no mechanical contrivance maintained upon the bridge for the purpose of signaling approaching boats. Failure in this respect alone tends to show negligence on the part of the owner of the bridge (City of Chicago v. Chicago Transp. Co., 222 Fed. 238, 241, 137 C. C. A. 654, L. R. A. 1915F, 1062 [C. C. A. 7]; Pennsylvania R. Co. v. Central R. Co., supra, 59 Fed. at page 192); and, further, it is hard to understand how a bridge operator of reasonable alertness could have failed to observe the approaching tow and in some way to signal the officers in charge of the pilot tug of the fact, if it had been a fact, that the lift could not be further raised; but such an excuse was not available, for the lift was fully raised immediately after the collision. The testimony is clear enough that some warning might have been given by the bridge operator in time to enable those in charge of the tow to stop and so avoid the collision. Here then we have the captain of the Abbott and the operator of the bridge failing, the one to notice plainly sounded signals of the Abbott, and the other to observe whether the bridge lift had been fully raised, until it was too late to prevent injury to the tow. It must therefore be concluded upon the facts disclosed that this mutual neglect brought about the damages that admittedly ensued.

[4] The remedy for such a situation as this admits of no serious doubt. If two vessels, instead of the pilot tug and the bridge, had through mutual fault caused these damages, a decree would have been awarded against each of the offending vessels for one-half the damages, with the right, however, in the libelant to collect from either of the respondents any deficiency arising through default in payment on the part of the other. The City of Hartford and the Unit, 97 U. S. 323, 329, 24 L. Ed. 930; The Alabama and the Game-Cock, 92 U. S. 695, 697, 23 L. Ed. 763. This would also be true if at the time of the collision one of the offending vessels had been at anchor. Owners of Brig James Gray v. Owners of Ship John Fraser et al., 62 U. S. 184, 16 L. Ed. 106. If the libelant had failed to sue the owners of both of the offending vessels, an order would have been entered on application to make the absent owner a party, so that under the facts a decree in the form stated could in the end have been rendered. The Hudson (D. C.) 15 Fed. 162, 176, decision by Judge Addison Brown. And as Chief Justice Fuller pointed out in Re New York, etc., Steamship Co., Petitioner, 155 U. S. 523, 528, 15 Sup. Ct. 183, 185 [39 L. Ed. 246], "the decision [in The Hudson] was announced February 7, 1883, and on March 26, 1883, rule 59 in admiralty was promulgated by this court. 112 U. S. 743." And that rule was a recognition of the practice approved by Judge Brown in The Hudson. See The No. K 1, 150 Fed. 111, 112, 80 C. C. A. 65 (C. C. A. 2); The Galileo (C. C.) 29 Fed. 538, 540. The principle underlying these decisions is that, regardless of

the rule against exaction of contribution among wrongdoers at common law, the enforcement in admiralty of contribution among offending vessels is a matter of right. The Mariska, 107 Fed. 989, 991, 47 C. C. A. 115 (C. C. A. 7); Erie & W. Transp. Co. v. Erie R. Co., 142 Fed. 9, 13, 73 C. C. A. 195 (C. C. A. 7). It was averred and admitted in the pleadings of the instant case that the suit was within the admiralty and maritime jurisdiction of the district court. We have seen that Congress has imposed distinct duties concerning the management of bridges like the one in issue, and that the rule of judicial decision is that failure to perform such duties subjects the owners to liability in favor of navigators suffering injuries in consequence of such neglect.

We therefore conclude that the decree must be reversed, with costs, and the cause remanded, with directions to enter a modified decree, dividing the damages and providing for recovery in accordance with this opinion, unless the railroad company shall upon good cause shown, within a reasonable time to be fixed by the court below, obtain permission to put in proofs.